DANIEL R. CONNOLLY vs. COMMONWEALTH.

Suffolk. December 6, 1978. — March 16, 1979.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS & ABRAMS, JJ.

*Homicide. Self-Defense. Practice, Criminal,* Instructions to jury. *Evidence,* Presumptions and burden of proof.

At a criminal trial held prior to this court's decision in *Commonwealth v. Rodriguez,* 370 Mass. 684 (1976), the judge's charge on self-defense constituted prejudicial error in implying that the defendant had the burden of proof on the issue and in suggesting that in order to acquit the jury would need to make a finding that the defendant had acted in self-defense. [529-538]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on October 14, 1977.

The case was reported by *Kaplan, J.*

*Allen Bress (John Leubsdorf* with him) for the plaintiff.

*Barbara A. H. Smith,* Assistant Attorney General, for the Commonwealth.

KAPLAN, J. By petition for writ of error, lodged in the Supreme Judicial Court for the county of Suffolk, Daniel Connolly has alleged that the judge's instructions to the jury at his 1968 trial for murder placed on him, illegally, the burden of proving that he acted in self-defense (exception was not taken at the trial; this was before the development of the constitutional law on the subject). By agreement with the Commonwealth, the record on the petition consists essentially of the transcript of the trial as it reached this court on the petitioner's unsuccessful appeal from his conviction of murder in the first degree. *Commonwealth* v. *Connolly,* 356 Mass. 617, cert. denied, 400 U.S. 843 (1970). The matter is before us on reservation and report, without decision, of a single justice of this

court. (Other postconviction applications previously made by the petitioner are noted in the margin.)[1]

To outline as much of the record as may be pertinent: The petitioner Connolly and a codefendant, Richard J. Cote, were charged with the murder on November 30, 1967, of John Chwalek.[2] About 11:30 P.M. that day Chwalek was in a Chevrolet automobile on Water Street in Lawrence in the company of Sylvia Haggar, with whom Connolly had recently broken off relations. Connolly was in a Rambler automobile ahead, driven by Cote. There was testimony that the Chwalek car, after a high speed chase, forced the Cote car off the road. Other testimony had Chwalek merely beeping his horn to signal the other car to stop. Both vehicles pulled over and Connolly and Chwalek emerged. According to Haggar (the major prosecution witness), Connolly, without particular provocation, fired a "gun" several times at Chwalek, then went to the car where she, Haggar, was sitting, and shot and wounded her; the Cote car left, then returned, and Connolly fired again at Chwalek who had crawled into the Chevrolet. Chwalek died of the multiple wounds. According to Haggar, only one weapon was involved.

Connolly took the stand to testify that Chwalek had approached with a shotgun and ordered him out of the Cote car. He got out, first grabbing from the back seat a .22 caliber rifle (he and Cote had bought the rifle the day before). Chwalek opened fire but Connolly ducked and retreated. His rifle went off (on cross-examination he said he "shot back"); then he dropped it. Connolly and Chwalek wrestled over the shotgun, during which time it was

---

[1] In 1974 this court, following a master's report, affirmed the judgment of conviction as attacked by writ of error alleging inadequacy of counsel. *Connolly* v. *Commonwealth,* 366 Mass. 435 (1974). On March 28, 1978, the United States District Court for Massachusetts dismissed a petition for habeas corpus pressing primarily the same claim. *Connolly* v. *Butterworth,* Civ. No. 75-4357-S, appeal pending.

[2] The codefendant Cote was also convicted of murder in the first degree.

Charges against a third man, John Richardson, were nolle prossed during the trial.

"going off" (Connolly could not say how many times). The struggle moved to the front seat of the Chevrolet. According to Connolly, Haggar at this time was pulling on his back and neck, and also grappling for the shotgun. At some point the Cote Rambler drove off. Connolly said he had no memory of what happened after the fatal episode or how he got back home.

Supporting Connolly's version to some extent was the fact that the wounds in Chwalek's body came both from the .22 caliber rifle and from a shotgun; and spent shotgun shells were found near the scene.[3] No shotgun was found, however. (The rifle was subsequently located in the basement of Connolly's apartment building.) There was no dispute that Connolly and Chwalek had previously had at least one violent encounter—Chwalek, according to Connolly, having pistol-whipped him, knocked him down, and kicked his face.

We do not elaborate on the evidence which we have digested to bring out the nature of the defense. On a previous occasion (see note 1, *supra*) a master found the case against Connolly was "very strong," *Connolly* v. *Commonwealth,* 366 Mass. 435, 437 (1974), but it is clear that the state of the proof was such as to require the trial judge to instruct on the issue of self-defense, and he did so.[4] The question is whether the instruction given was constitutionally adequate under our decisions beginning with *Commonwealth* v. *Rodriguez,* 370 Mass. 684 (1976).[5]

1. *The standard.* As malice is an essential element of murder, and a proper exercise of self-defense negates malice, it follows from *Mullaney* v. *Wilbur,* 421 U.S. 684

---

[3] The shotgun wounds were not mentioned in the court's opinion affirming Connolly's conviction. They were not relevant to the issues considered there.

[4] As to the quantum of proof that invokes the judge's duty to charge on self-defense, see *Commonwealth* v. *Kendrick,* 351 Mass. 203 (1966); *Commonwealth* v. *Houston,* 332 Mass. 687 (1955).

[5] Our decisions, in order, were *Rodriguez, Stokes, Collins,* and *Gagne,* all discussed *infra.*

(1975),[6] that the Commonwealth bears the burden of proving beyond a reasonable doubt, in any case where the issue arises, that there was not a proper exercise of self-defense; and the judge should so charge.[7] *Rodriguez* made this inference from *Mullaney*; and it found wanting a charge which suggested, without explicitly stating, that the defendant had to prove that he acted in proper self-defense, and also failed to "impress on the jury the critical nexus between the elements of the crime charged and the absence of self-defense." 370 Mass. at 691.

*Rodriguez* did not decide whether instructions would be reviewed in light of this standard in the absence of request or objection at trial, 370 Mass. at 692 n.9, or whether the standard applied retroactively. The case of *Commonwealth* v. *Stokes,* 374 Mass. 583, 588-590 (1978), answered both questions in the affirmative; as to the latter point it followed *Hankerson* v. *North Carolina,* 432 U.S. 233 (1977).[8] We added in *Stokes,* however, that we would bring "greater expectations" (374 Mass. at 591) to

---

[6] *Mullaney* struck down a Maine statute that placed upon a defendant the burden of proving the provocation necessary to reduce a murder to manslaughter. Since provocation negated malice, one element of "intent," 421 U.S. at 702, the Court found that the Maine rule impermissibly shifted to the defense the burden on an essential element of murder.

We continue to follow *Mullaney* despite the later decision of *Patterson* v. *New York,* 432 U.S. 197 (1977), see *Gagne* v. *Commonwealth,* 375 Mass. 417, 420 n.3 (1978).

[7] *Rodriguez* sets out a model charge placing this burden on the Commonwealth and instructing the jury to acquit if they have a reasonable doubt whether there was a proper exercise of self-defense. *Commonwealth* v. *Rodriguez,* 370 Mass. at 692 n.10. See *Commonwealth* v. *Fluker, ante* 123, 130 n.4 (1979) (upholding an instruction "virtually identical" to model charge).

[8] Although *Hankerson* gave *Mullaney* complete retroactive effect, the Supreme Court provided an escape by permitting States to hold that failure of counsel to object at trial was a waiver of the constitutional defect in the charge (432 U.S. at 244 n.8) — even though the defect was not known to be such at the time. We held in *Stokes,* 374 Mass. at 589-590, that a specific objection to the judge's instructions on burden of proof need not be shown in order to secure review.

charges in trials that occurred after *Mullaney* (June 9, 1975), and especially after our *Rodriguez* decision (July 15, 1976), than we would to charges in earlier trials, when *Mullaney* and *Rodriguez* could not have been foreseen.

We also said in *Stokes* (374 Mass. at 590-591):

"In adopting the ruling of *Mullaney* . . . we are not required to apply a narrow and precise test to the instructions given by the judge. If *Mullaney* imposed such a requirement, reversal would follow with mathematical certainty in all cases where self-defense or reasonable provocation had been raised in the evidence sufficiently and where the burden of proof as to these precise issues had not been placed by specific language on the Commonwealth.

"Rather, we believe that, in any case where the requirements of *Mullaney* are placed in issue, the charge to the jury must be examined in its entirety to determine whether the constitutional requirements have been met. . . . For example, a jury charge might well be constitutionally sufficient which clearly placed the burden of proving malice beyond a reasonable doubt on the Commonwealth and contained other discussion which, although not referring to the burden of proof as to self-defense and reasonable provocation, adequately defined those factors and established them as negating a finding of malice."

The last requirement in the passage quoted above, that self-defense or provocation be "established . . . as negating a finding of malice," reiterated and clarified what we said in *Rodriguez*, that the "critical nexus" between the elements of the crime and self-defense must be brought home.[9]

[9] The text of the Stokes standard reveals the error in the Commonwealth's argument, stated in its brief but not elaborated upon, that in review of pre-*Mullaney* and -*Rodriguez* trials "it is only an instruction which creates a presumption of guilt, or explicitly places upon a defendant the burden to establish or prove self defense that is so constitutionally impermissible as to require reversal." *Stokes* in fact held instructions inadequate although they did not explicitly burden the

2. *The instant charge.* On these lines we analyze the charge in the present case. The jury were told that the Commonwealth had the "burden of proving beyond a reasonable doubt every essential element of the crime charged." In regard to murder, the judge said, "[T]he burden is on the Commonwealth to prove beyond a reasonable doubt that [Connolly] intentionally fired the shots that struck the deceased without legal justification or excuse and without such extenuation as may reduce the crime to manslaughter but with what in the law is called 'malice aforethought.'" Defining malice, the court said, "It not only includes hatred and ill-will or revenge, but every other unjustifiable motive. . . . It is enough if the killing was intentional and was without legal excuse and justification."

Arriving at manslaughter and self-defense, the judge mentioned killing in self-defense as one example of lawful homicide. Then, after outlining the substantive requirements of self-defense without reference to any burden of proof, the judge said:

"The defendant Connolly claims as a ground of defense that the shooting was lawful, and that it was justified because done in defending himself. . . . [I]n order to find the defendant . . . was justified you must find that the deceased . . . assailed the defendant . . . and the defendant was so situated that he could not escape, or that he already had done all that he reasonably could to get away from the deceased.

---

defendant; and in *Gagne v. Commonwealth,* 375 Mass. 417 (1978), the charge was approved not because the judge refrained from placing the burden on the defendant but because "there are no extenuating and potentially misleading instructions such as we have seen in other cases." *Id.* at 422. Both the *Stokes* and *Gagne* trials were pre-*Mullaney.*

The Commonwealth has evidently abandoned in this court an additional argument made to the single justice, that retroactive application of *Mullaney,* in cases where proper instructions were not sought, should be confined to direct appeals and exclude cases where the judgment is attacked collaterally, as by writ of error. But *Gagne* arose on collateral attack, and we must reach the merits of the petitioner's claim to ensure that there has been no substantial miscarriage of justice. See *LeBlanc v. Commonwealth,* 363 Mass. 171, 173-174 (1973).

"Unless you find that to be the situation, you cannot find that the defendant Connolly was justified in killing in self-defense.

"If you find that he could not get away or that he had done all that he reasonably could to get away, but you should also find that there was nothing in the situation which you say caused him to have a reasonable fear of immediate death or great bodily harm and that he did not in fact have such a fear, then he was not justified in killing in self-defense."

The initial instruction regarding burden of proof on all essential elements, and about absence of legal justification or excuse as a condition of a guilty verdict, satisfied part of the *Stokes* guideline: it "clearly placed the burden of proving malice beyond a reasonable doubt on the Commonwealth." The later instruction that homicide may be justifiable if committed in self-defense, although good as far as it went, did not fully comport with the further *Stokes* requirement that self-defense be "established . . . as negating a finding of malice." Yet the defect[10] might be thought not enough in itself, in a pre-*Mullaney* trial, to hold an instruction bad. The greater difficulty with the charge lies in its repeated use of "finding" language when explaining the law of self-defense.

The finding language combined two errors. First, especially when taken in relation to the judge's assertion that the defendant "claims" self-defense as a "ground of defense," this language of finding strongly implied, if it did not directly impose, a burden of proof (i.e., persuasion) on the defendant. Indeed, whereas instructions using a terminology of burden of proof have a technical cast and

---

[10] As the Supreme Court of Pennsylvania said in rejecting an instruction given in a case much like ours, "the jury must be fully aware that the finding of malice requires the exclusion of the defense of self-defense"; an instruction is erroneous if it "fail[s] to explain the relationship between malice and evidence of self-defense [and] it indicates that both malice and self-defense may be legally established in a murder prosecution, when in fact the two are mutually exclusive." *Commonwealth* v. *Heatherington*, 477 Pa. 562, 568, 569 (1978).

may well be obscure to jurors, instructions telling the jury that they must find or be satisfied of a proposition, which the defendant "claims," would readily convey to them in comprehensible lay terms that it was the defendant who was required to wield the laboring oar.

The second error may be seen as more prejudicial to the defendant than any parts of the charges held bad in our cases beginning with *Rodriguez*. It is contained in the instruction that "in order to find the defendant ... was justified you must find" certain elements of self-defense, and that "[u]nless you find that to be the situation, you cannot find that the defendant Connolly was justified in killing in self-defense." This language does not describe precisely what degree of persuasion is required—whether beyond a reasonable doubt, or by a preponderance, or something in between — but it suggests at least a preponderance. That is, the jury would understand the words to mean that, in order to acquit, they must find the defendant, more likely than not, exercised proper self-defense. But, under the law, a jury, to acquit, need not "find" the various elements of self-defense. It is enough for acquittal that there be a reasonable doubt whether the defendant acted in proper self-defense. It will be noted that this defect in the instructions is separate from the question of who had the burden.

On this second point, *Notaro* v. *United States*, 363 F.2d 169 (9th Cir. 1966), is instructive. There the court accepted that the government had the burden of proving absence of entrapment once the issue had been raised in a prosecution under the Federal narcotics law. The court held erroneous an instruction in terms of finding, "since in requiring that the jury 'should find' certain facts, the existence of which were made indispensable to acquittal, a definite, conclusive, determination of disputed factual issues was required of the jury as a condition to acquittal. Such a requirement was erroneously imposed. The appellant was indeed entitled to acquittal if the jury 'should find' that he 'had no previous intent or purpose to com-

mit' the offense 'and did so only because he was induced
or persuaded by some agent of the Government'. But he
was also entitled to be acquitted if, from the evidence, the
jury, because of the entertainment of reasonable doubt,
should be unable to 'find' that the necessary elements of
the defense had not been excluded." *Id.* at 176.[11]

We can conceive that an isolated suggestion that the
jury must find self-defense in order to acquit might not
invalidate a charge if it could be fairly viewed as over-
come and outweighed in the minds of a jury by the initial
correct instruction and by the instructions as a whole. Cf.
*Gibson* v. *Commonwealth, post* 539, 542-543 (1979). Here,
however, the finding language was repeated six times.
The effect was to foist on the defendant the burden on the
issue and to misstate the impression regarding that issue
with which the jury must be left in order to acquit when
the case was over.[12]

Our previous decisions in *Rodriguez* and in *Common-
wealth* v. *Collins,* 374 Mass. 596 (1978), portend our result
here. In *Rodriguez* the judge used finding language re-
peatedly when charging on self-defense, and he summed
up, "the defendant could be found not guilty *if you are
satisfied* . . . that [he] acted within the permissible limits
of self-defense." 370 Mass. at 690; emphasis in original. In
*Collins* the finding idea was drilled in by repeated use. In
both cases the jury were misled as to which side had the
burden; they may also have been misled as to the level of

[11] The court also said, "The jury was properly informed, in a general
instruction, as to the burden of proof which rested upon the prosecu-
tion; however, we cannot assume that it carried the advice of the
general instruction into application to the instruction emphasizing
the specific elements of the defense. The possibility that there was
confusion or misunderstanding is strengthened, not eliminated, by
view of the instructions as a whole." 363 F.2d at 176.

[12] We note, additionally, that the judge omitted to instruct on the
possibility of a manslaughter verdict for excessive force used in self-
defense. This is not an issue on the present petition for a writ of error,
but a conceivable effect on the jury should be observed. Once failing
to "find" self-defense, the jury, dismissing it entirely from their delib-
erations, could have considered the defendant's use of force premedi-
tated and discounted any chance of a lesser degree of guilt.

belief they must achieve to support a claim of self-defense, although in neither case did the judge push the point further (as did the judge in the present case) by saying that "unless you find" the elements of self-defense "you cannot find" the defendant justified.[13]

3. *Commonwealth contentions.* With respect to the first vice in the charge—the casting of the burden—the Commonwealth according to its brief expects the jury to reason "that since the Commonwealth bears the burden of proving beyond a reasonable doubt that a killing is done without legal justification, and a killing in self-defense is defined as one which is justifiable and lawful . . . it follows that the Commonwealth retains the burden of proof to demonstrate the absence of legal justification, i.e., the absence of self-defense." We suggest that in the present case this was by no means a clear inference. To make such an inference clear, *Stokes* sought a statement that "established [self-defense] as negating a finding of malice." Further, a charge thus initially correct would fail if repeated suggestions of a burden on the defendant were made later on. Here the initial general instruction was separated from the prejudicial self-defense instruction by some twenty-four pages of transcript. We cannot assume that the jury discounted analytically the inference flowing from the finding language; on these facts we agree with the thought expressed in *United States* v. *Corrigan,* 548 F.2d 879, 882 (10th Cir. 1977): "A specific instruction which is defective in respect to the burden of proof is not remedied by correct general statements of the law elsewhere given in the charge unless the general statement clearly indicates that its consideration must be imported into the defective instruction" (quoting from *DeGroot* v. *United States,* 78 F.2d 244, 253 [9th Cir. 1935]).[14] See *Ber-*

[13] In *Stokes,* where the instructions were also held deficient, the brief remarks on self-defense, although not using language of "finding," left an implication that the defendant had the burden or, at best, left the question in the air.

[14] In *Corrigan,* an appeal from a conviction for assaulting a Federal officer, the charge correctly stated that the government bore the burden of proof, but also said, "[T]he Defendant has raised the defense of self defense. . . . [Y]ou *are to consider* whether the Defendant acted in

*rier* v. *Egeler*, 583 F.2d 515, 518 (6th Cir.), cert. denied sub nom. *Warden, State Prison of S. Mich.* v. *Berrier*, 439 U.S. 955 (1978);[15] *Notaro* v. *United States, supra*, 363 F.2d at 176.

With respect to the second mistake, that in the "unless you find" part of the charge, the Commonwealth says the court was "merely instructing on those elements of self-defense which would render a killing justified." True, the context was a definition of self-defense, but the language conveyed nevertheless a wholly erroneous view of the state of the evidence that could warrant acquittal.

The Commonwealth seeks support from *Gagne* v. *Commonwealth*, 375 Mass. 417 (1978), but there, after a correct initial charge as to the general burden and malice (with repetition that the burden went to all essential elements of the crime), the judge specified, as the record shows, that sufficient provocation would rebut "the fact of malice." There was then an essentially neutral statement as to self-defense without language of "finding" or "satisfying." Trial, as in the present case, was before *Mullaney*, and, under the more relaxed scrutiny, the instruction passed muster. The finding language in the present case distinguishes it from *Gagne* and puts it in the sphere of *Rodriguez* and *Collins*. Although in *Rodriguez* proper objection was taken, and in *Collins* the trial postdated *Mullaney*, those factors should not be held controlling where serious error is shown. Our standard for the pre-*Mullaney* period cannot be utterly flaccid. The present case is the exceptional one with definitely toxic elements which call for a sanction.

a reasonable manner . . . ." 548 F.2d at 883; emphasis in original. The court held the charge unduly confusing and permissive of the erroneous inference that "since the defendant raised the issue, it is his burden to prove it to the jury's satisfaction." *Id.*

[15] In *Berrier*, a murder case, the State trial judge gave contradictory instructions on burden of proof as to self-defense, placing it on both prosecutor and defendant. The Federal District Court granted a writ of habeas corpus, reasoning that *Mullaney* had invalidated any assignment of a burden to the defendant, and stating that the mistaken instruction was "only partially rectified by [the] final statement re-

Finally, the Commonwealth argues, although with a noticeable lack of enthusiasm, that any mistake in the instructions was harmless — "not so prejudicial" as to constitute reversible error. But an error on such a matter as self-defense goes to "the very heart of the truth-finding function," *Stokes,* 374 Mass. at 589. The evidence demanded a charge on the point. We cannot say beyond a reasonable doubt that the jury verdict was unaffected by the serious errors as to burden and quantum of proof contained in the charge.[16]

> *Judgment reversed.*
> *Verdict set aside.*
>
> *Case remanded to the Superior Court for further proceedings.*

---

lieving the defendant from the burden of satisfying the jury of his claim." 583 F.2d at 518. The Court of Appeals affirmed.

[16] A holding of harmless error in the circumstances of this case would be no more tenable than resort to the escape route of the *Hankerson* case. See the concurring opinion of Miller and Harshbarger, JJ., in *Jones* v. *Warden, W. Va. Penitentiary,*     W. Va.    , (241 S.E.2d 914, 920), cert. denied, 439 U.S. 830 (1978). See also *United States* v. *Robinson,* 545 F.2d 301, 306 (2d Cir. 1976); *Commonwealth* v. *Heatherington, supra,* 477 Pa. at 570; *State* v. *Rice,* 379 A.2d 140, 146 (Me. 1977).