COMMONWEALTH *vs.* JOHN J. HARRINGTON.

Suffolk.   November 13, 1978. — May 29, 1979.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Homicide. Self-Defense. Practice, Criminal,* Instructions to jury.

Where, at a murder trial, a judge's instructions on the issue of self-defense were minimal, did not explicitly state that homicide may be justifiable if committed in self-defense, did not convey to the jury that self-defense negates a finding of malice, and embodied the erroneous implication that it was the defendant's burden to prove self-defense at least by a fair preponderance of the evidence, the defendant was entitled to a new trial. [668-671]

INDICTMENT found and returned in the Superior Court on June 15, 1973.

Following review of the case in the Supreme Judicial Court, a motion for a new trial was heard by *Roy,* J.

*David J. Fine* for the defendant.

*Robert J. Schilling,* Special Assistant District Attorney (*Alice Hanlon* with him) for the Commonwealth.

KEVILLE, J. The defendant was convicted by a jury of second degree murder and sentenced to life imprisonment. That conviction was affirmed on appeal. *Commonwealth* v. *Harrington,* 367 Mass. 13 (1975). His conviction of assault with a dangerous weapon with intent to rob arising from the same incident had been placed on file. *Id.* at 15. More than two and one-half years later the defendant moved for a new trial. His motion was denied by a judge of the Superior Court. A single justice of the Supreme Judicial Court allowed the defendant's claim of appeal under G. L. c. 278, § 33E. The appeal was entered in this court. Our disposition of a single issue makes it unnecessary to treat those errors assigned by the defend-

ant arising from the denial of his motion for a new trial.[1] That issue with respect to the murder conviction[2] is whether the trial judge's instructions were constitutionally inadequate on self-defense, self-defense albeit with excessive force and reasonable provocation under *Mullaney* v. *Wilbur*, 421 U.S. 684, 704 (1975), and its progeny. Although both the trial and affirmance of the defendant's conviction occurred before the decisions in *Mullaney* v. *Wilbur, supra,* and *Commonwealth* v. *Rodriguez,* 370 Mass. 684 (1976), and although the defendant failed to challenge the judge's instructions at trial or on appeal, we are not precluded from reviewing his instructions in order to avoid the risk of a miscarriage of justice. See *Commonwealth* v. *Stokes,* 374 Mass. 583, 588-590 (1978); *Connolly* v. *Commonwealth,* 377 Mass. 527, 530-531 & n.9. (1979); *Gibson* v. *Commonwealth,* 377 Mass. 539, 540-541 (1979). *Stokes* was decided after the defendant had filed motions for a new trial, after the hearing on the denial of the motions, and after the defendant had filed his claim of appeal. Although the *Mullaney* claim is being made for the first time before us, we agree with the defendant that considerations of judicial economy and efficiency make it appropriate for us to deal with the question at this time.[3] We hold that the trial judge's instructions improperly

[1] The defendant also challenges the denial of his motion for leave to interview grand jurors heard by a judge other than the judge who had conducted the trial and heard the motion for a new trial. As the defendant appears to press this challenge only in the alternative to his request for a new trial, we do not consider it on this appeal.

[2] The defendant's conviction of assault with a dangerous weapon with intent to rob, having been placed on file with the defendant's consent, is not before us on this appeal. See *Commonwealth* v. *Delgado,* 367 Mass. 432, 438 (1975). Neither the Commonwealth nor the defendant asserts the contrary.

[3] Ordinarily the scope of appeal from the denial of a motion for a new trial is not to be enlarged to include review of an issue not addressed to the judge who heard the motion. *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 234-235 (1973). However, no purpose would be served here in refusing to pass on the *Mullaney* issue, thus obliging the defendant to present it to a trial judge in the first in-

shifted the burden of proof to the defendant on the issue of self-defense and that the defendant is entitled to a new trial on the indictment for murder.

At the trial Rosemarie LaTerza testified that on the morning of May 2, 1973, she, the defendant and David Raimer met and planned to rob the victim Alfred Mott at his apartment. Raimer claimed knowledge that the victim would be visited that evening by a young male prostitute known as Jimmy whose appearance at the apartment would signify that Mott was at home. Raimer suggested that they could then rob both Jimmy and Mott. Raimer and the defendant then stole a car which they were to use that evening in the robbery.

Later that afternoon LaTerza, Raimer and the defendant went to the defendant's home in Belmont where they obtained two hunting knives which they planned to use to frighten Mott. That evening, after driving to Mott's apartment, they saw Jimmy leave but then lost sight of him when they tried to follow him. After returning to Mott's building, LaTerza and the defendant went to Mott's apartment while Raimer remained in the car.

Mott opened the apartment door but then tried to close it against LaTerza and the defendant who succeeded in forcing their way inside. The defendant asked Mott for money but Mott denied having any. The defendant then grasped Mott about the waist and held a hand over Mott's

stance. It would be inappropriate to require the defendant to raise the *Mullaney* claim by way of a motion for a new trial in view of the fact that the claim does not present "the task of resolving factual disputes underlying alleged constitutional errors," but purely a question of law on the transcript involving no discretion. *Earl* v. *Commonwealth,* 356 Mass. 181, 183 (1969). Moreover, the trial judge (who also denied the motion for a new trial) has since retired. See *Delle Chiaie* v. *Commonwealth,* 367 Mass. 527, 530 (1975). It is to be noted that postconviction *Mullaney* claims have usually been raised by writ of error. See *Connolly* v. *Commonwealth,* 377 Mass. 527 (1979); *Gibson* v. *Commonwealth,* 377 Mass. 539 (1979); *Gagne* v. *Commonwealth,* 375 Mass. 417 (1978). However, to require the defendant to raise this issue by writ of error at this juncture would be a needless formality.

mouth while LaTerza searched through a desk drawer. As she looked up she observed that Mott's white T-shirt was covered with blood. Mott was screaming. The defendant told him to "shut up" and then stabbed him. LaTerza and the defendant then left Mott's apartment. After they had driven for two blocks, she noticed that the defendant was bleeding from a stab wound in the leg.

The defendant's version differed markedly from that of LaTerza. He testified that the purpose of going to Mott's apartment was not to rob Mott but to look for Jimmy who had some of Raimer's clothes and owed Raimer money. The defendant also claimed that he did not go to Belmont that day to pick up a knife but rather that he always carried it with him and that the car was stolen for the purpose of moving some stolen goods. He asserted that they did not force their way into the apartment but were admitted by Mott. The defendant claimed that Mott pushed him first, causing him to fall, whereupon Mott jumped on him and struck him. In the course of their struggle, the defendant's knife was drawn. He claimed that it was only after Mott had stabbed him that he retaliated by stabbing Mott.

The medical examiner testified that Mott received six deep stab wounds, one of them through the breastbone. One was four inches deep, another eleven and six-tenths inches deep. It was his opinion that Mott's wounds could have been received while standing, consistent with LaTerza's testimony, or during a struggle, consonant with the defendant's testimony. The defendant's stab wound in the leg was deep and required his hospitalization for fifteen days.

At the trial of an indictment for murder, due process requires that the judge instruct the jury, when, as here, it is warranted by the evidence, that the prosecution, in order to establish the requisite malice, must prove beyond a reasonable doubt that the crime was not committed in self-defense, *Commonwealth* v. *Rodriguez*, 370 Mass. at 691-692, or was not committed in self-defense

albeit with excessive force or with reasonable provocation, *Commonwealth* v. *Stokes*, 374 Mass. at 592. In accordance with the holding of these cases, jury instructions "which suggested, without explicitly stating, that the defendant had to prove that he acted in proper self-defense," have been found wanting. *Connolly* v. *Commonwealth*, 377 Mass. at 530.

Although "greater expectations" (*Connolly* v. *Commonwealth, supra*) and consequently more careful scrutiny of the judge's charge are required in the review of a trial occurring after *Mullaney*, and particularly after *Rodriguez*, than would be required in the case of instructions in earlier trials (*Connolly* v. *Commonwealth, supra* at 530-531), such as that before us, we nonetheless conclude that the charge was inadequate, even under the less rigid standard of review applicable to pre-*Mullaney* and pre-*Rodriguez* charges.[4]

While the judge here instructed the jury that the prosecution was required to prove each and every ingredient of the crimes charged beyond a reasonable doubt, his

---

[4] The judge instructed the jury on self-defense as follows: "Now, some noises have been made. I don't mean that particularly disparagingly, I don't mean it disparagingly at all. But some argument has been made to you, and evidence was given here about Mott having jumped on Harrington, thrown him to the floor. And although the argument using the words, "self-defense," was not proposed to you, I, nevertheless, feel that I must say to you: What is the principle of self-defense?

"Well, of course, first of all, it is undisputed here that Mott was not armed and he was in his own house and he had a right to be there; and Harrington came in there uninvited. If there was a fight and a struggle, what started it? That is important when you talk about self-defense, because a defendant who pleads self-defense cannot be the aggressor, he can't plead self-defense in killing a person if he, himself, was the aggressor.

"Self-defense is available to a defendant only under these circumstances: If the defendant was not the aggressor and he had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm; and that he could save himself only by using deadly force. Then and then only has he a right to employ deadly force in his own defense. That is for you to consider."

instructions on the issue of self-defense were minimal, did not explicitly state that homicide may be justifiable if committed in self-defense and, more importantly, did not convey to the jury that self-defense negates a finding of malice. *Commonwealth* v. *Stokes*, 374 Mass. at 590-591. *Connolly* v. *Commonwealth*, 377 Mass. at 532. Whether these defects alone would require reversal in a pre-*Mullaney* case (*id.*) such as this one, we need not decide, for the charge embodied additionally the erroneous implication that it was the defendant's burden to prove self-defense at least by a fair preponderance of the evidence. *Id.* at 532-535 & n.13.[5]

Prejudice resulting from the judge's charge on self-defense was compounded by his failure to charge on the possibility of a verdict of manslaughter specifically for excessive force used in self-defense or for murder committed on reasonable provocation. See *Connolly* v. *Commonwealth*, 377 Mass. at 535 n. 12.[6]

The Commonwealth argues that any deficiencies in the judge's charge were harmless beyond a reasonable doubt, *Chapman* v. *California*, 386 U.S. 18, 24 (1967), inasmuch

---

[5] The judge referred to "a defendant who pleads self-defense." Additionally, the judge's statement that it was "undisputed [that] . . . Harrington came in [to Mott's apartment] uninvited" could have been interpreted by the jury as ignoring the defendant's testimony that Mott voluntarily admitted him to the apartment.

[6] In noting this omission, we do not hold that it is necessarily error to fail to charge on the issue of self-defense, albeit with excessive force, or of reasonable provocation, where the defendant has, as in this case, failed to request *any* instructions whatsoever on these issues (as distinguished from a pre-*Mullaney* and pre-*Rodriguez* case where the defendant has merely failed to request instructions which place the appropriate burden of proof regarding these issues on the Commonwealth). See *Commonwealth* v. *Stokes*, 374 Mass. at 591-592. The judge did instruct the jury more generally that they could return a manslaughter verdict if they came "to the conclusion . . . that the activities of Harrington in rendering those blows constituted willful, reckless misconduct on his part . . . but [that] he had no intention of killing." This language failed to make clear that the prosecution had the burden of proof on this issue.

as the jury convicted the defendant of assault by means of a dangerous weapon with intent to rob, and, having done so, "had no choice but to find the defendant guilty of second-degree murder" under the felony-murder doctrine. We do not agree. Although it may be unlikely that the jury found that the killing did not occur in the course of the felony, it would have been within the jury's province to have rendered verdicts of guilty of the felony but not guilty of felony-murder. See *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969); *Commonwealth* v. *White*, 363 Mass. 682, 684-685 (1973); *Commonwealth* v. *Bowman*, 373 Mass. 760, 762 n.2 (1977).

The judge permitted the jury to find second degree murder under either the felony-murder or intentional homicide theories, unlike *Commonwealth* v. *Fluker*, 377 Mass. 123, 128-129 (1979), in which the jury's verdict of second degree murder was clearly attributable to an instruction on intentional homicide and not to an instruction on felony-murder, inasmuch as the latter permitted only a finding of first degree murder.

In the circumstances of this case, the judge's inadequate charge which shifted the burden of proof to the defendant on the issue of self-defense entitles the defendant to a new trial on the indictment for murder. Any retrial of that indictment must be treated as one for second degree murder, the defendant having been acquitted of murder in the first degree. *Green* v. *United States*, 355 U.S. 184, 190 (1957), as made applicable to the States by Benton v. *Maryland*, 395 U.S. 784, 793-796 (1968). *Walsh* v. *Commonwealth*, 358 Mass. 193, 198 (1970).

> *Judgment reversed.*
> *Verdict set aside.*