COMMONWEALTH *vs.* JOHN J. HARRINGTON.

Suffolk.   September 11, 1979. — January 9, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ..

*Homicide.   Self-Defense.   Practice, Criminal,* Instructions to jury, New trial, Appeal.  *Error,* Harmless.

At a murder trial, there was sufficient evidence to raise the issue whether the defendant had acted in self-defense when he stabbed the victim during a struggle in the victim's room.  [450-452]

Even judged by the more relaxed standard applied to jury instructions given in cases pre-dating *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), the judge's charge to the jury in a murder case was inadequate in failing to place upon the Commonwealth the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense.  [452-454]

Where the judge at the trial of indictments charging murder and armed assault with intent to rob erroneously instructed the jury respecting the burden of proof on self-defense, the defendant was entitled to a new trial of both indictments.  [455]

INDICTMENTS found and returned in the Superior Court on June 15, 1973.

A motion for a new trial was heard by *Roy, J.*

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

*David J. Fine* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J. This is an appeal by the defendant from the denial of his motions for a new trial on two indictments charging the crimes of murder and armed assault with intent to rob. The appeal was heard by the Appeals Court which reversed the conviction of murder on a ground not theretofore raised by the defendant either at his trial or in his assignment of errors. *Commonwealth* v. *Harrington,* 7 Mass. App. Ct. 665 (1979). We granted the Commonwealth's request for further appellate review. G. L. c. 211A, § 11. For the same reasons stated by the Appeals Court in its opinion, *supra,* we reverse the judgment and vacate the verdict of guilty of murder against the defendant. We also set aside the verdict of guilty of armed assault with intent to rob.

We review the prior proceedings in this case to the extent necessary for an understanding of the issue on which we base our decisions and the reasons for the conclusions which we reach.

On June 15, 1973, the defendant was indicted for the crimes of murder and assault with intent to rob, being armed with a dangerous weapon, to wit, a knife, both crimes being alleged to have been committed against Alfred Mott on May 2, 1973. On November 17, 1973, he was convicted of murder in the second degree, for which he was sentenced to life imprisonment at the Massachusetts Correctional Institution at Walpole, and of the armed assault, this charge being placed on file.

With the assistance of different counsel the defendant appealed the murder conviction to this court pursuant to G. L. c. 278, §§ 33A-33G, originally alleging numerous errors but

ultimately arguing only those relating to capital punishment and the exclusion of five jurors and expressly waiving all others. We affirmed the judgments in *Commonwealth* v. *Harrington*, 367 Mass. 13 (1975), by an opinion which concluded, at 24: "On appraisal of the whole record, we find no occasion to disturb the conviction under G. L. c. 278, § 33E."

On June 2, 1977, the defendant with the assistance of still other counsel filed a motion for a new trial on both indictments, and on October 11, 1977, acting pro se, he filed what was treated as a supplement to the previous motion. We refer to the two combined as a single motion for a new trial. Before filing this motion the defendant obtained leave to do so from a single justice of this court as required by the final sentence of G. L. c. 278, § 33E, in view of the prior review of his case by this court under the statute in *Commonwealth* v. *Harrington*, *supra* at 24. We do not construe the granting of leave to file the motion for a new trial as once again bringing to this court "the whole case for [our] consideration of the law and the evidence." G. L. c. 278, § 33E.

The motion for a new trial was heard by the trial judge and on November 7, 1977, it was denied by him without his filing any findings, rulings or decision thereon. The appeal from that denial is the vehicle which started this case on its route to this court. Since our ultimate disposition of this appeal does not rest on the issues raised by the motion, we summarize them briefly in the margin below for information only.[1]

---

[1] The principal grounds on which the defendant sought a new trial are the following: (a) alleged perjured concealment of rewards or inducements by the prosecution to a witness, (b) ineffective assistance of counsel at trial, (c) disparity of sentence given defendant from those given to two accomplices from whom prosecutor agreed to accept pleas to lesser offenses while refusing the same opportunity to the defendant, (d) refusal of judge to poll jurors, (e) insufficiency of evidence to "sustain" the verdict, and (f) failure of trial counsel to obtain a record of the proceedings before the grand jury. The last three grounds listed above were not argued by the defendant in his brief.

Subsequent to the denial of his motion for new trial, defendant moved for leave to interview the grand jurors who had indicted him in 1973. This was denied after a hearing, and the defendant added his appeal of this denial to his other assignments of error on the present appeal. We do not reach the issues it raises for the same reasons as stated above.

Before leaving the subject of the motion for a new trial we note that the defendant attempted thereby to raise a number of issues which he could have raised at the original trial or in the course of his direct appeal, but which he did not raise at either point. While trial judges may have discretionary power to permit a motion for a new trial to be used as the vehicle by which to recoup or resurrect opportunities for appellate review previously lost by waiver or otherwise, on issues which could have been but which were not seasonably raised, the exercise of that power should be reserved for deserving situations. See *Commonwealth* v. *DiPietro*, 373 Mass. 369, 387-388 (1977), and cases cited. It should not be exercised routinely to afford parties a substitute for or supplement to appellate opportunities previously available to them but not recognized or not exercised. The indiscriminate exercise of this power effectively circumvents the long-standing rule that issues not raised at trial or pursued in available appellate proceedings are treated as waived. *Commonwealth* v. *Grace*, 376 Mass. 499, 500 (1978). *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 229 (1973), and cases cited. The trial judge's discretionary power to give relief from such a waiver by permitting such issues to be raised for the first time by a motion for a new trial should be exercised only in those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result.

The Appeals Court reversed the conviction of the defendant on the ground that the judge's instruction on the burden of proof on self-defense was constitutionally inadequate, *Commonwealth* v. *Harrington*, 7 Mass. App. Ct. 665, 666-667 (1979), a ground perceived after the hearing on the new trial motion based on our decisions in *Commonwealth* v. *Stokes*, 374 Mass. 583 (1978), and later cases on the same subject. While a defendant is usually required first to raise such an issue at trial or by a motion for a new trial, and not for the first time in an appellate court, *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 235 (1973), because this issue presents only an issue of law and not of fact, and also because the trial judge has since retired, we conclude as did

the Appeals Court that judicial economy would best be served by our passing on the question in its present posture, rather than by requiring a new proceeding seeking postconviction relief. Cf. *Commonwealth* v. *Harrington,* 7 Mass. App. Ct. 665, 666 n.3 (1979). Because the defendant was tried before *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), and its progeny, we review this issue on the basis of the principles stated in *Commonwealth* v. *Rodriguez,* 370 Mass. 684 (1976), and *Stokes, supra.* We do so notwithstanding the failure of defense trial counsel to request any instructions on self-defense or to object to the instructions given thereon, to the end that an alleged error of constitutional dimension, if we so conclude it to be, shall not go uncorrected.

1. *Did evidence fairly raise the issue of self-defense?* A defendant is entitled to have the jury at his trial instructed on the law relating to self-defense if the evidence, viewed in its light most favorable to him, is sufficient to raise the issue. *Commonwealth* v. *Monico,* 373 Mass. 298, 299 (1977). There must be evidence warranting at least a reasonable doubt that the defendant: (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case. *Commonwealth* v. *Harris,* 376 Mass. 201, 208 (1978), and cases cited. Absent the latter two elements, an instruction on manslaughter because of reasonable provocation or because of the use of excessive force in self-defense may be warranted.

In summarizing the evidence in the light most favorable to the defendant, we look first to that part of his own testimony relating to the events leading up to the homicide.[2]

---

[2] The evidence in this case is adequately summarized in the decision of the Appeals Court, 7 Mass. App. Ct. 665, 667-668 (1979). At this point we shall refer only to that part of the evidence which is necessary to our discussion of the present issue.

The defendant and one Rosemarie LaTerza went to the rooming house of the victim, Alfred Mott, for the purpose of finding a certain youth named Jimmy, believed to have been in Mott's company a short time earlier. After ringing the bell they were admitted to the building and shown to Mott's room by another roomer who knocked on Mott's door. Mott answered that he would "be there in a minute." When Mott opened the door, the defendant and LaTerza, neither of whom knew Mott, stepped into the room and the door closed behind them. Mott asked what they wanted and the defendant asked whether Jimmy was there. When Mott responded, "Jimmy who," the defendant said, "You know, Jimmy, the little sixteen-year old kid. I just saw him leave. Did he come back?" Mott said, "No, no, Jimmy is not here," and, without saying more, he immediately threw himself on the defendant, causing the latter to fall backwards over a piece of furniture. Mott came down on top of the defendant, and punching and kicking him "like he's gone completely crazy." After a few seconds and five or six punches, the defendant reached for a hunting knife which he habitually kept concealed in his waist band. As soon as he grasped his knife, Mott grabbed his hand and they struggled for possession of the weapon, each trying to turn it on the other. In the course of the struggle the defendant received a serious cut on his leg requiring hospitalization for over two weeks. Only after the defendant had been stabbed did he attempt to stab Mott with the knife. The defendant was scared and he did not know what was happening when Mott attacked him.

Other witnesses testified that after the fracas the defendant's watch was found, detached from the band, on the floor of the room, and that dishes and small statues were found broken and strewn about the room. The room was small and contained a bed, a rocking chair, a desk, a small table with a television on it, a dresser, and a bookcase which was found partially crushed. The door to the room opened inward.

We believe that if all of the defendant's testimony were accepted as true, it would be sufficient to raise an issue of self-defense. Cf. *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 746 (1975), and cases cited. The jury could have inferred that once the struggle began the defendant was unable to rise up and open the door to retreat, and that the defendant initially reached for the knife for his own defense. In such circumstances, the reasonableness of the force used in self-defense is to be decided by the jury as the triers of fact, after being properly instructed on the applicable rules of law. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966), quoting from *Monize* v. *Begaso*, 190 Mass. 87, 89 (1906).

2. *Burden of proof on self-defense.* The constitutional requirement that the prosecution must prove beyond a reasonable doubt every essential element of the offense charged against a defendant was articulated by the United States Supreme Court in *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), made retroactive by *Hankerson* v. *North Carolina*, 432 U.S. 233 (1977), and applied by this court in several recent cases, beginning with *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976). See, e.g., *Commonwealth* v. *Stokes*, 374 Mass. 583 (1978); *Commonwealth* v. *Collins*, 374 Mass. 596 (1978); *Gagne* v. *Commonwealth*, 375 Mass. 417 (1978); *Commonwealth* v. *Harris*, 376 Mass. 201 (1978); *Commonwealth* v. *Fluker*, 377 Mass. 123 (1979); *Connolly* v. *Commonwealth*, 377 Mass. 527 (1979); *Gibson* v. *Commonwealth*, 377 Mass. 539 (1979).

The principle underlying these cases is that the prosecution is constitutionally required to prove beyond a reasonable doubt every essential element of the offense charged against a defendant. If, at a trial for murder, there is evidence reasonably tending to indicate the existence of factors such as self-defense or reasonable provocation which could negate the presence of malice, the Commonwealth has the burden of proving beyond a reasonable doubt that such factors do not exist. In such a case the defendant is entitled to

have the trial judge instruct the jury in language which effectively places this burden on the Commonwealth.

In *Stokes, supra* at 590-591, we stated that "the charge to the jury must be examined in its entirety to determine whether the constitutional requirements have been met." We stated further that we would apply a more exacting standard to jury instructions given after the *Mullaney* and *Rodriguez* decisions than that applied to charges delivered in cases, like the present one, tried before those decisions. The instructions to the jury in the present case fail to comport in several respects with even the more relaxed standard.

3. *Instruction given to jury on self-defense.* The trial judge properly instructed the jury in general that the defendant bore no obligation to prove his innocence, and that it was the "obligation of the Commonwealth to establish each and every ingredient of the crime charged beyond a reasonable doubt." An instruction on the issue of self-defense was given, apparently on the judge's own initiative,[3] but it failed to make clear that the absence of self-defense was such an ingredient, and failed to define self-defense adequately or to explain its significance with reference to

---

[3] The judge instructed the jury on self-defense as follows: "Now, some noises have been made. I don't mean that particularly disparagingly. I don't mean it disparagingly at all. But some argument has been made to you, and evidence was given here about Mott having jumped on Harrington, thrown him to the floor. And although the argument using the words, 'self-defense,' were not proposed to you, I, nevertheless, feel that I must say to you: What is the principle of self-defense?

"Well, of course, first of all, it is undisputed here that Mott was not armed and he was in his own house and he had a right to be there; and Harrington came in there uninvited. If there was a fight and a struggle, what started it? That is important when you talk about self-defense, because a defendant who pleads self-defense cannot be the aggressor, he can't plead self-defense in killing a person if he, himself, was the aggressor.

"Self-defense is available to a defendant only under these circumstances: If the defendant was not the aggressor and he had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm; and that he could save himself only by using deadly force. Then and then only has he a right to employ deadly force in his own defense. That is for you to consider."

the question of malice. Moreover, the instruction given on self-defense was misleading in that it may have placed on the defendant some burden of proving that he was not the aggressor as a prerequisite to his raising the defense. The charge as a whole failed to place upon the Commonwealth the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. For these reasons we hold that the charge did not comport with even the more re-laxed standard applied to jury instructions given in cases pre-dating *Mullaney*. See *Connolly* v. *Commonwealth*, 377 Mass. 527 (1979). Compare *Gagne* v. *Commonwealth*, 375 Mass. 417, 420-421 (1978), habeas corpus denied, sub nom. *Gagne* v. *Meachum*, 602 F.2d 471 (1st Cir.), cert. de-nied, 444 U.S. 992 (1979).

The judge's statements that "[s]elf-defense is available to a defendant only under [certain] circumstances," and is never "available" to an aggressor, implicitly placed the burden on the defendant to prove the existence of facts and circumstances justifying his use of force in self-defense. The court's introductory comments to its self-defense instruc-tion, and the statement that "it is undisputed here that . . . Harrington came in there uninvited," may have tended to foreclose more serious consideration of the issue of self-de-fense by the jury, if not to invade their province by sug-gesting that Harrington was the aggressor and thus ineligi-ble for such a defense. Cf. *Commonwealth* v. *Maguire*, 375 Mass. 768, 772-773 (1978); *Pfeiffer* v. *Salas*, 360 Mass. 93, 99-101 (1971). In sum, the present case is another "excep-tional one with definitely toxic elements which call for a sanction." *Connolly, supra* at 537.[4]

---

[4] No instructions were requested, and none were given, concerning the subject of possible negation of malice and consequent reduction of murder to manslaughter through reasonable provocation, or on the use of exces-sive force in self-defense, although they were fairly raised by the evidence. Although the defendant now complains that he was plainly entitled to these instructions, no such claim was made either on his first appeal or in the motions for new trial. Any error in this regard has been waived. *Commonwealth* v. *Grace*, 376 Mass. 499, 500 (1978), and cases cited.

4. *Harmless error.* The Commonwealth argues that any defects in the charge were harmless error because the jury, by finding the defendant guilty of assault with a dangerous weapon with intent to rob, necessarily rejected the defendant's version of the killing. It is further argued that, since the judge instructed the jury that they could convict the defendant of second degree murder under either a theory of felony murder or a theory of intentional homicide,[5] the assault conviction necessarily signifies that they chose the former theory, to which self-defense is not a defense.

We cannot state beyond a reasonable doubt that the jury convicted the defendant on a theory of felony-murder, nor can we state that the deficiency in the judge's charge as to burden of proof did not infect the jury's deliberations on the murder indictment as a whole. We believe that in the circumstances of this case the seriously erroneous instruction as to the burden of proof "goes to 'the very heart of the truth-finding function,'" *Connolly, supra* at 538, quoting *Commonwealth* v. *Stokes,* 374 Mass. at 589.

It would be speculative to conclude that the jury would have convicted the defendant of assault with intent to rob even if they had been properly instructed on the right of self-defense and on the Commonwealth's burden of proof as to that right. We therefore also reverse the defendant's conviction on the assault indictment which was placed on file. Cf. *Commonwealth* v. *Delgado,* 367 Mass. 432, 438 (1975).

As the defendant was impliedly acquitted of murder in the first degree at his trial in 1973, any retrial of the murder indictment must be treated as one for second degree murder. *Benton* v. *Maryland,* 395 U.S. 784, 793-796 (1968). *Green* v. *United States,* 355 U.S. 184, 190 (1957). *Commonwealth* v. *Ferrara,* 368 Mass. 182, 195 (1975). *Commonwealth* v. *Burke,* 342 Mass. 144 (1961).

---

[5] This instruction was probably error, but in any event more favorable to the defendant than required. *Commonwealth* v. *Dickerson,* 372 Mass. 783, 795-798 (1977). *Commonwealth* v. *Ladetto,* 349 Mass. 237, 248-249 (1965).

In case No. 75013 the judgment is reversed and the verdict is set aside. In case No. 75347 the verdict is set aside.

*So ordered.*