COMMONWEALTH *vs.* SARO CHIOVARO.

Suffolk.    Jan. 27. — Oct. 7, 1880.    MORTON & ENDICOTT, JJ., absent.

Under the St. of 1864, c. 250, an objection to an indictment, for a formal defect apparent on the face thereof, which does not affect the jurisdiction of the court, is not open, upon a motion in arrest of judgment, after a plea of guilty.

On an indictment against an accessory before the fact of murder, the omission in the indictment to state the legal effect of the facts particularly set forth against the principal, to define the part of the body on which the mortal wound was inflicted, to allege the place at which the defendant was an accessory before the fact, are all formal objections not affecting the jurisdiction of the court.

INDICTMENT for murder, consisting, besides the usual caption and signatures, of the following allegations:

" The jurors for the Commonwealth of Massachusetts on their oath present, that Nicolo Infantino, otherwise called Nick, otherwise called the boy, and Antonio Ardito, otherwise called the Greek, on the fourteenth day of August in the year of our Lord one thousand eight hundred and seventy-nine, at Boston aforesaid, in and upon one Joseph F. Frye, feloniously, wilfully and of their malice aforethought did make an assault; and that the said Infantino and the said Antonio a certain pistol, then and there charged with gunpowder and one leaden bullet, then and there feloniously, wilfully and of their malice aforethought did discharge and shoot off to, against and upon the said Frye; and

that the said Infantino and the said Antonio, with the leaden bullet aforesaid out of the pistol aforesaid then and there by the force of the gunpowder aforesaid by the said Infantino and the said Antonio discharged and shot off as aforesaid, then and there feloniously, wilfully and of their malice aforethought did strike, penetrate and wound the said Frye, in and upon the left side of the said Frye, giving to the said Frye then and there, with the leaden bullet aforesaid so as aforesaid discharged and shot out of the pistol aforesaid by the said Infantino and the said Antonio, in and upon the left side of the said Frye, one mortal wound, of which said mortal wound the said Frye then and there instantly died.

" And so the jurors aforesaid, upon their oath aforesaid, do say, that the said Infantino and the said Ardito the said Frye, in manner and form aforesaid, then and there feloniously, wilfully and of their malice aforethought did kill and murder:

" Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided.

" And the jurors aforesaid for the Commonwealth of Massachusetts, on their oath aforesaid, do further present, that Nicolo Infantino, otherwise called Nick, otherwise called the boy, and Antonio Ardito, otherwise called the Greek, on the fourteenth day of August in the year of our Lord one thousand eight hundred and seventy-nine, at Boston aforesaid, in and upon one Joseph F. Frye, feloniously, wilfully and of their malice aforethought did make an assault; and that the said Infantino and the said Ardito a certain pistol, then and there charged with gunpowder and one leaden bullet, then and there feloniously, wilfully and of their malice aforethought did discharge and shoot off, to, against and upon the said Frye ; and that the said Infantino and the said Ardito, with the leaden bullet aforesaid out of the pistol aforesaid then and there by the force of the gunpowder aforesaid by the said Infantino and the said Ardito discharged and shot off as aforesaid, then and there feloniously, wilfully and of their malice aforethought did strike, penetrate and wound the said Frye, in and upon the left side of the said Frye, giving to the said Frye then and there, with the leaden bullet aforesaid so as aforesaid discharged and shot out of the pistol aforesaid by the said Infantino and the said Ardito, in

and upon the left side of the said Frye, one mortal wound, of which said mortal wound the said Frye then and there instantly died.

" And the jurors aforesaid, upon their oath aforesaid, do further present, that Saro Chiovaro, otherwise called Nino Antonio, otherwise called Larry O'Neil, Vincenzo Bandiera, otherwise called Charley Frost, and Giuseppe Donato, otherwise called Joseph Donato, before the said felony and murder was committed in manner and form aforesaid, to wit, on the fourteenth day of August in the year aforesaid, were accessories thereto before the fact, and then and there feloniously, wilfully and of their malice aforethought did counsel, hire and procure the said Infantino and the said Ardito the felony and murder aforesaid, in manner and form aforesaid, to do and commit:

" Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided."

To this indictment the principals pleaded guilty of murder in the second degree. The present defendant pleaded guilty as accessory before the fact of murder in the second degree, and afterwards moved in arrest of judgment " that no offence known to the law is fully and plainly, substantially and formally, set forth and described to him in and by said indictment, as required by law."

This motion was argued before *Gray*, C. J. and *Endicott*, J., who were of opinion that it should be overruled, but, at the request of the defendant, reserved the questions of law arising thereon for the determination of the full court, and for the entry of such judgment as law and justice might require.

*I. S. Morse*, for the defendant.

*G. Marston*, Attorney General, *& F. H. Gillett*, Assistant Attorney General, for the Commonwealth.

LORD, J. The indictment upon which the defendant is held begins with charging against one Infantino and one Ardito the murder of Joseph F. Frye, setting out all the facts and all the legal conclusions necessary to a proper indictment for the crime of murder with technical accuracy and precision. It then recites over again all the facts which are necessary to constitute the crime of murder, and alleges that the acts charged were committed by the two persons before named. It then concludes by

alleging that the present defendant and two other persons named, "before the said felony and murder was committed in manner and form aforesaid, to wit, on the fourteenth day of August in the year aforesaid, were accessories thereto before the fact, and then and there feloniously, wilfully and of their malice afore-thought did counsel, hire and procure the said Infantino and the said Ardito the felony and murder aforesaid, in manner and form aforesaid to do and commit: against the peace of said Common-wealth, and contrary to the form of the statute in such case made and provided."

If this last allegation (omitting the words "were accessories thereto before the fact and") had immediately followed the charge against the principals, the indictment would have sub-stantially conformed to approved precedents, and would have sustained a conviction both of the principals and of the acces-sories of the crime of murder. *Sanchar's case*, 9 Rep. 114 *a*. Stark. Crim. Pl. (2d ed.) 35, 398, 481. *Commonwealth* v. *Bowen*, 13 Mass. 356; *S. C.* cited 123 Mass. 427, 428. *Commonwealth* v. *Knapp*, 10 Pick. 477; *S. C.* more fully reported, Knapp's Second Trial (Salem ed. 1830) 8. *Sampson* v. *Commonwealth*, 5 Watts & Serg. 385. The only embarrassment in this case has been created by the separation of the charge against the accessories from the charge against the principals, and by the unnecessary repetition, by way of preface to the charge against the accessories, of the facts necessary to constitute the crime of murder.

The words with which this repetition is introduced, "And the jurors aforesaid for the Commonwealth of Massachusetts, on their oath aforesaid, do further present," do not necessarily denote a new count. In indictments containing two or more counts, such words are indeed prefixed to each count subsequent to the first. Stark. Crim. Pl. 376. But they are also often used, in indictments containing but one count, merely to begin a new paragraph or sentence, either as introductory to the sup-plemental charge against an accessory, after fully setting forth the charge against the principal, or for the apparent purpose of interrupting the continuity of narrative, so as to arrest the attention and fix it upon such circumstances as are essential elements of the crime charged. Stark. Crim. Pl. 479, 481, 482,

542, 545–549, 562, 571 *& seq., passim.* 1 Chit. Crim. Law, 176. *Commonwealth* v. *Glover*, 111 Mass. 395. *Commonwealth* v. *Cohen*, 120 Mass. 198.

If this indictment should be treated as containing a single count, the unnecessary repetition of the facts and circumstances, as well as the superfluous words "were accessories before the fact," might be rejected as surplusage, leaving the indictment complete in all respects against the accessories as well as the principals. *The King* v. *Morris*, 1 Leach (4th ed.) 109. *The Queen* v. *Crespin*, 11 Q. B. 913. *Commonwealth* v. *Hunt*, 4 Pick. 252. *Commonwealth* v. *Randall*, 4 Gray, 36. But we have preferred to consider it (as it was treated in the argument for the defendant, and so as to give him the full benefit of his objections) as containing two counts, the one against the principals, and the other against the accessories.

Assuming that the charge against the accessories constitutes a distinct count, then, although in this count every fact which is necessary to constitute the crime of murder is alleged to have been committed by the principals, with all technical precision in form and in substance, yet the legal effect of those facts, which it is necessary to state, and which is ordinarily stated in the language which is used in the previous allegation, "And so the jurors aforesaid, upon their oath aforesaid, do say that the said Infantino and the said Ardito the said Frye, in manner and form aforesaid, then and there feloniously, wilfully and of their malice aforethought did kill and murder," is omitted. *Anon.* Dyer, 304, pl. 56. 2 Hale P. C. 186, 344. Foster's Crown Law, 424. 2 Hawk. *c.* 25, § 55. 3 Chit. Crim. Law, 737, 751. *Commonwealth* v. *Davis*, 11 Pick. 432, 438. *Commonwealth* v. *Sanborn*, 14 Gray, 393, 394. *Commonwealth* v. *Desmarteau*, 16 Gray, 1, 16. And this second count cannot be held to contain a sufficient charge of manslaughter, because in the case of killing by a single violent act, such as shooting with a pistol, there can be no accessory before the fact to the crime of manslaughter; for if the accessory is present at the killing, he is a principal; and if he is absent and has previously authorized the act, the act of killing is premeditated and is murder. *Goff* v. *Byby*, Cro. Eliz. 540; *S. C.* nom. *Bibithe's case*, 4 Rep. 43 *b*; *S. C.* nom. *Goose's case*, Moore, 461. 1 Hale P. C. 450, 457, 616. 1 Hawk. *c.* 30, § 2.

2 Hawk. c. 29, §§ 7, 24. 1 East P. C. 218. *Regina* v. *Gaylor* 7 Cox C. C. 253; *S. C.* Dearsly & Bell, 288.

The case of *Regina* v. *Gaylor* is a peculiar one, and it is interesting, not as it bears upon any question involved in this discussion, nor for the principles of law which were or might be supposed to be settled by it; for the court took time for advisement, and subsequently, as the report says, "affirmed the conviction, but without giving their reasons for so doing." But it is interesting rather by reason of the discussion between the judges and the counsel during the argument. Gaylor's wife had produced her own death by voluntarily taking a drug for the purpose, as she supposed, of procuring an abortion upon herself, though in fact she was not pregnant. The prisoner was indicted, not as an accessory before the fact to her murder, but for the substantive offence of manslaughter, and counsel and court both indulged in interesting and acute queries as to the nature of the offences, both that committed by the wife and that by the husband; and various speculations as to the nature of the offence were suggested. The grounds suggested by the prisoner's counsel upon which the court should hold that the facts in the case did not constitute the crime of manslaughter were, that the prisoner's wife, in wilfully committing an unlawful act which might cause her death, and which in fact did cause her death, was a *felo de se*, and therefore guilty of the crime of murder; and also that the facts proved against the defendant showed him to be merely an accessory to the crime; and as in law there could be no such offence as an accessory before the fact in manslaughter, no offence was charged. It was evidently a case of novel impression, and although one or more of the judges were in doubt whether the doctrine as laid down by Lord Hale, that there can be no accessory to manslaughter, might not admit of some qualification, under peculiar circumstances, we know only that the prisoner was held guilty of manslaughter without knowing any of the grounds upon which the decision was based; and the last remark of Pollock, C. B. was, "You have not satisfied me that, as far as the woman is concerned, she has been guilty of any offence at all." The interruptions of judges in the course of an argument are not adjudications, and nothing is adjudged in that case which bears upon the question under discussion.

The Declaration of Rights, prefixed to the Constitution of Massachusetts, art. 12, declares, among other things, that "no subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him."

It is to be observed that the Declaration of Rights is but a declaration of fundamental principles, by which all the departments of the government are to be bound in its administration. Neither of the departments of the government can do what it is forbidden by the Constitution to do, but each department is bound in its action to conform to its provisions, and each within its appropriate sphere to make proper provision for complying with its requisitions. Generally this is a duty which devolves upon the legislative department of the government; and the same article of the Declaration of Rights before quoted declares it to be the right of a subject "to produce all proofs that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defence by himself, or his counsel, at his election;" and it also declares that "the Legislature shall not make any law that shall subject any person to a capital or infamous punishment, without trial by jury."

It is too plain for discussion that the true meaning is that the Legislature, in providing for the proceedings in courts of justice, shall not make any law which shall take away from a subject any one of the rights which by the fundamental law are declared to be his; and, in providing for the administration of the criminal law, they must do so in such manner as shall fully preserve to him all these rights. But it demands no more. It does not require that these rights shall be forced upon him by law, against his wish; and a law that subjects a person to any infamous punishment upon his plea of guilty is not a violation of the provision of the Constitution that the Legislature shall make no law to subject a person to infamous punishment without trial by jury. The whole spirit, and the letter also, of the Constitution, are observed by such legislation as shall enable the party charged with an offence, without unnecessary embarrassment or expense, to avail himself of these rights. In erecting courts, and providing for the administration of the criminal law, the Legislature is the proper body to determine the times and

places for holding courts, when and in what manner juries shall be required to be in attendance, and so to prescribe the course of proceeding as shall best promote the public interest and secure individual right.

In every case in which an indictment is presented against any person, there arise, of necessity, two distinct questions, one of law, the other of fact. They are to be tried by two different tribunals; the question of law must be ruled on by the court; the question of fact must be tried by the jury. We speak now of those questions of law which arise upon the indictment itself, and not of those which may be involved in a general verdict of guilty or not guilty. The question of law presented is this: Have the grand jury in their presentment described against the defendant an offence fully and plainly, substantially and formally, as required by the fundamental law? and that must be decided by the court. The question of fact is, Has the government sustained by proof the allegations against the defendant? and this question must be decided by the jury. The decision of neither of these questions involves the consideration of the other, and all experience confirms the proposition that each should be tried independently of the other. It is therefore not only a rightful, but a wise, exercise of legislative authority to say that they shall not be tried together, but that, if a party indicted contends that the charge against him is not properly described to him, he shall present that question for the decision of the court before the question of fact is presented to the jury. It is quite clear that the authority of the Legislature to require them to be tried separately includes the authority to prescribe the order in which they shall be tried. If it were competent to consider the propriety of the order which the Legislature has seen fit to adopt, that which has been prescribed is certainly most beneficial to the party charged; for when he alleges that there is nothing which he is bound to answer in the charge against him, it might operate with very great hardship to him to be subject to the annoyance, trouble and expense of settling a fact which when settled is immaterial. Still, it is undoubtedly within the power of the Legislature to prescribe any order of proceeding which is not oppressive; and we think that this order of proceeding was intended to be effected, and

was effected, by the St. of 1864, *c.* 250.* *Commonwealth* v. *Walton*, 11 Allen, 238. *Commonwealth* v. *Whitney*, 108 Mass. 5. *Commonwealth* v. *Wolcott*, 110 Mass. 67. *Green* v. *Commonwealth*, 111 Mass. 417.

The only objections taken in argument to the sufficiency of the second count are : 1st. That it omits to state the legal effect of the facts particularly set forth against the principals. 2d. That it does not sufficiently define the part of the body of the deceased on which the mortal wound was inflicted. 3d. That it does not allege the place at which the present defendant was an accessory before the fact. All these objections are purely formal, and do not affect the jurisdiction of the court. The accessory, under our statutes, would have been equally liable if he had not been at the time in the same county, or even within the Commonwealth. Gen. Sts. *c.* 168, § 5 ; *c.* 171, § 19. *Commonwealth* v. *Macloon*, 101 Mass. 1.

The entire force of the able argument of the defendant's counsel, therefore, depends upon the correctness of this proposition, which he attempts to maintain : " The statutes in regard to taking objections to indictments or complaints have no bearing upon this case, as there was no empanelling of a jury."

If this proposition is sound, the position of the defendant is also sound, unless we consider the entire indictment and reject all that is not well pleaded as surplusage, and find enough in the remainder to sustain the charge. We do not deem it necessary to inquire whether that may properly be done, because we are satisfied that, by the St. of 1864, the Legislature intended that questions of law apparent upon the record by reason of formal defects should be presented to the attention of the court before proceeding to verify the facts. The language of the second section is, in relation to objections to formal defects apparent on

---

* " Section 2. Any objection to a complaint, indictment or other criminal process, for any formal defect apparent on the face thereof, shall be taken by demurrer or motion to quash, assigning specifically the objections relied on before a judgment has been rendered by a trial justice or a police court, or a jury has been 'sworn in the Superior or Supreme Judicial Court.

" Section 3. No motion in arrest of judgment shall be allowed for any cause existing before verdict, unless the same affects the jurisdiction of the court."

the record, before "a jury has been sworn in the Superior or Supreme Judicial Court." The third section is much more broad, and is that "no motion in arrest of judgment shall be allowed for any cause existing before verdict, unless the same affects the jurisdiction of the court." If the language of the statute is to be construed with literal exactness, there has been in this case no empanelling of a jury, and no verdict. But neither the statute nor the Constitution itself is necessarily to be interpreted according either to its exactly literal or exactly technical meaning. The Constitution, in restraining the power of the executive, provides that "no charter of pardon, granted by the Governor with the advice of Council before conviction, shall avail the party pleading the same." Const. Mass. c. 2. § 1, art. 8. Conviction of a crime is never complete until judgment has been rendered upon that conviction; and yet so obvious was it that the purpose of the people in limiting the power of the executive in this respect was to prevent the granting of pardons before trial, that the verdict of a jury has been deemed sufficient, without a judgment of the court upon it, to authorize the Governor to grant his pardon. *Commonwealth* v. *Lockwood,* 109 Mass. 323. So if, with literal exactness, we should construe the language of the Constitution before referred to, that the Legislature should not make any law that shall subject a person to infamous punishment without trial by jury, a trial by jury must necessarily take place before the punishment could be awarded, whatever the plea might be. The true mode of construing both Constitution and statutes is to ascertain what purpose it is intended to accomplish, what mischief to remedy, and then to ascertain whether its language, taken all together, is sufficiently apt for the purpose.

It is entirely clear, taking the whole statute together, that it meant that there should be several stages in the course of a trial, at which different stages different proceedings should be had, and that the order of such proceedings should be, as before said, first, the sufficiency of the charge, in matter of form, to proceed to trial with, and second, the verification of the facts. It is impossible to imagine that the Legislature intended that the facts found by the verdict should be a more conclusive verification than the solemn confession of them by the party in open court; and it would be a very strange interpretation of the act to say

that it meant that, after all the facts were proved before a jury, the party against whom the facts were proved should be deprived of any privilege which he would have had by confessing in open court the truth of the facts thus proved. The true meaning of the statute is, that, when the proceedings have gone so far that there remains nothing to be done except the imposition of sentence, then formal defects previously existing shall not be availed of. The use of the phrase "before a jury has been sworn" confirms this view; for the empanelling of a jury and all the proceedings up to the time of their verdict are in law a single act, and the use of the phrase "before a jury has been sworn" in this section, and "before verdict" in the third section, is decisive that the Legislature intended that matters of mere form must be presented before entering upon the investigation of the facts; and that if, after the trial is entered upon, it shall appear during the course of such investigation that the facts proved do not in point of law sustain the charge in the indictment, any objection on that ground shall be made before verdict, that is, before such investigation is terminated: so that when, in the due course of proceedings, the facts charged against the party shall be verified, his right to interpose formal objections which existed prior to the verification of the facts shall be precluded. This view of the law takes from him no right. If he desires to interpose any merely technical or formal objection, he may do so at the proper stage of the proceedings; and if his objection is not sustained, he can take the judgment of the ultimate tribunal as well after a plea of guilty as after a verdict.

If, therefore, this view be correct, that merely formal objections of law must be taken before entering upon the consideration of facts, and if all questions of law arising in the course of the trial must be presented before the final determination of the facts, — and we cannot doubt that this is the true construction of the statute, — it follows that the motion in arrest of judgment must be overruled, and the defendant

*Sentenced for murder in the second degree.*