COMMONWEALTH vs. DIEGO RODRIGUEZ.

Worcester. November 8, 1983. — March 5, 1984.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Practice Criminal,* Instructions to jury, Presumptions and burden of proof, New trial, Indictment. *Constitutional Law,* Trial by jury, Assistance of counsel.

At the trial of indictments charging assault and battery by means of a dangerous weapon and assault with intent to murder, a substantial risk of a miscarriage of justice was created by the judge's instructions to the jury on self-defense which, taken as a whole, appeared to shift to the defendant the burden of proving that he had acted in self-defense. [551-553]

A judge did not abuse his discretion in denying a motion for a new trial of a criminal case where the testimony of two witnesses offered in support of the motion as newly discovered evidence was known to the defendant before trial, where much of this testimony was hearsay, and where the testimony would have been cumulative of evidence which had been introduced at the trial. [554-555]

At the trial of indictments charging violations of the controlled substances law, certain actions of the judge which the defendant claimed amounted to directing verdicts of guilty on three of the indictments did not constitute error, where these charges had been submitted with agreement as to the facts and no question of law respecting them had been raised. [555-556]

A defendant convicted of distributing heroin and sentenced as a repeat offender was not entitled on appeal to challenge the adequacy of the indictment where he had pleaded guilty to so much of the indictment as he later claimed was inadequate, and where he had waived his objections to the form of the indictment by failing to raise them by a pretrial motion. [556]

INDICTMENTS found and returned in the Superior Court Department on January 4, 1979.

The cases were tried before *McCooey,* J., a District Court judge sitting under statutory authority. Motions for a new trial were heard by *Rutledge,* J.

*Patricia A. O'Neill* (*Thomas J. Herbert* with her) for the defendant.

*Daniel F. Toomey,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.  On December 12, 1978, two undercover Massachusetts State troopers, trailed by two Worcester police officers as backup, climbed the back stairs of a triple-decker to the apartment of the defendant, Diego Rodriguez, in order to execute a search warrant issued as a result of a prior sale of heroin to one of the undercover troopers.  The facts with respect to the ensuing shootout are in dispute, but it is agreed that both troopers and the defendant received bullet wounds.

In early January, 1979, a Worcester County grand jury returned eight indictments, summarized in the margin.[1]  On

---

[1] Indictment No. 87062    Possession of a dangerous weapon without an F.I.D. Card (12/12/78).  Disposition: placed on file.

Indictment No. 87068    Possession of heroin with intent to distribute (12/12/78). Disposition: 12-15 years, concurrent with 87070

Indictment No. 87069    Distribution of heroin (8/29/78).  Disposition: 12-15 years, concurrent with 87070

Indictment No. 87070    Distribution of heroin, "said offense being a subsequent offense" (12/11/78).  Disposition: 18-25 years

Indictment No. 87071    Assault and battery with a dangerous weapon (State Trooper Guilmet) (12/12/78). Disposition: 9-10 years, concurrent with 87070

Indictment No. 87072    Assault and battery with a dangerous weapon (State Trooper Holmes) (12/12/78). Disposition: 9-10 years, concurrent with 87070

Indictment No. 87073    Assault with a dangerous weapon with intent to murder (Holmes) (12/12/78).  Jury reduced to assault with intent to kill.  Disposition: 9-10 years, concurrent with 87070

Indictment No. 87074    Assault with a dangerous weapon with intent to murder (Guilmet) (12/12/78).  Jury reduced to assault with intent to kill.  Disposition: 9-10 years, concurrent with 87070.

As indictment No. 87062 was placed on file with the defendant's consent, it is not before us on this appeal.

February 21 and 22, 1979, less than two months later, the defendant was tried before a jury on all but one of the indictments (No. 87069), and guilty verdicts were returned. The following day the defendant entered a plea of guilty to indictment 87069 and to the portion of indictment No. 87070 which alleged a "subsequent offense" (as to which the defendant had not been found guilty by the jury). The judge then sentenced the defendant as set out in the footnote above. No appeal was taken from the convictions.

More than two and one half years later, the defendant filed a motion for a new trial (later amended) which was heard by another judge (the trial judge having retired). The motion judge, in a detailed memorandum, rejected the defendant's claims (1) that there was newly discovered evidence warranting a new trial, (2) that there was reversible error in the trial judge's instructions on the lesser included offense of assault with intent to kill and on self-defense, (3) that it was error for the trial judge to direct verdicts on two indictments, (4) that a defect in the language of indictment No. 87070 required resentencing, and (5) that there was ineffective assistance of trial counsel. We are of opinion that, taking the jury instructions as a whole and considering the evidence adduced at trial, there is a substantial likelihood that the judge's charge may have tended to foreclose serious consideration by the jury of the issue of self-defense. See *Commonwealth* v. *Harrington,* 379 Mass. 446, 454 (1980). We therefore reverse the convictions on the indictments for assault and battery with a dangerous weapon and for assault with intent to kill. As to the other four claims, the motion judge was correct.[2]

We summarize the evidence adduced at trial. State Trooper Holmes, a plain clothes officer assigned to drug investigations in Worcester, met the defendant in August,

---

[2] The judge also ruled, upon the Commonwealth's concession, that the sentences on indictments Nos. 87068 and 87069 exceeded those permitted by the applicable statute, G. L. c. 94C, § 32, as appearing in St. 1971, c. 1071, § 1, and, accordingly, vacated those sentences and ordered resentencing.

1978, and became known to the defendant only as "Brew." Holmes testified, and the defendant admitted, that on August 29, 1978, the defendant sold heroin to Holmes, or "Brew," as he knew him. On December 11, 1978, Holmes again purchased heroin from the defendant, this time at a third floor apartment in a triple-decker on Providence Street in Worcester. The defendant admitted in his testimony to having made this sale as well. The next day, Holmes, now equipped with a search warrant, phoned the defendant and arranged to purchase heroin. Holmes and State Trooper Guilmet, both dressed in "hippie clothing," arrived at the Providence Street address by taxi and climbed the back stairs. Two Worcester police officers approached from a direction not within the line of sight from the defendant's window and followed up the stairs. After knocking on the door, the defendant invited "One. Only one." of the two visitors in. Holmes entered, noticed the defendant had a gun strapped to his side, and moved past the defendant into the room. Guilmet saw the defendant's hand by his side and thrust the glass-panelled door against the defendant, jamming the defendant between the door and the wall, and simultaneously said, "State police." Guilmet saw the defendant raise a gun and fire. Guilmet jumped away from the door down the stairs. Holmes heard the glass breaking and Guilmet's shout. He then heard gunfire and turned and exchanged gunfire with the defendant. Holmes, Guilmet and the defendant were wounded. The Worcester police officers then entered the apartment and arrested the defendant.

All four police officers testified to the effect that the defendant's life had been threatened by someone in New York because of the defendant's assistance in solving a New York murder. There was also evidence from the officers that the defendant's life had recently been threatened in an attempted robbery. One officer noted the defendant had presented no trouble during a prior arrest, was "a lot of fun," and was not "pugnacious." There was also evidence that the defendant's apartment door was protected by a "steel cage

that [could] be extended across the door" and that persons approaching the apartment were closely watched from inside the apartment.

The defendant testified, admitting to having made the drug sales. His sole position at trial was that he acted in self-defense (when an unidentified individual burst into his home immediately after the defendant had permitted "only one" to enter, he feared for his life, and responded by reaching for his handgun and firing).

1. *Self-defense Instructions.* In our consideration of the adequacy of the jury instructions we apply "the standard that we reverse only upon a showing of grave prejudice or substantial likelihood that a miscarriage of justice has occurred." *Commonwealth v. Grace,* 381 Mass. 753, 758-759 (1980). We recognize that defense counsel failed to request instructions or object at trial and that it is "our 'unbroken practice' not to allow use of a motion for new trial to compel a judge to review questions of law which could have been raised at the trial. *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 229 [1973]. *Commonwealth* v. *Grace,* 376 Mass. 499, 500 [1978]." *Commonwealth* v. *Garcia,* 379 Mass. 422, 439 n.10 (1980). However, there is also recognized a rarely used power to set aside a verdict in order to prevent a miscarriage of justice when a decisive matter was not raised at the trial, and this standard applies to collateral attack by motion for a new trial. *Grace, supra* at 756-757. See e.g., *Harrington, supra* at 449-450; *Commonwealth* v. *Stokes,* 374 Mass. 583, 587-592 (1978); *Garcia, supra* at 439. Since self-defense is a "sensitive part of jury instructions in a criminal trial, [an error in which] can readily lead to a miscarriage of justice," *Commonwealth* v. *Deagle,* 10 Mass. App. Ct. 748, 751 (1980), we review the instructions under the *Grace* standard.[3]

---

[3] As the trial of this case occurred after the decisions of *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), and *Commonwealth* v. *Rodriguez,* 370 Mass. 684 (1976), we bring "greater expectations, and consequently more careful scrutiny" to a charge on the issue of self-defense. *Commonwealth* v. *Collins,* 374 Mass. 596, 599 (1978). *Gagne* v. *Commonwealth,* 375 Mass.

The judge instructed the jury on the issue of self-defense on several separate occasions; when he did, the instructions were lengthy and colored by factual discussions of other cases. An early, and recurrent, theme was that the jurors must "ask [them]selves . . . did this man reasonably, was he reasonably in fear of his life." This disapproved choice of language (see *Connolly* v. *Commonwealth*, 377 Mass. 527, 536 n.14 [1979]), repeated six times, was unaccompanied at that point by instructions that the Commonwealth had the burden of proof on the issue. Interspersed between these instructions were references to the defendant's duty to retreat, stating, "you don't take human life without first at least making an attempt to retreat." Compare *Commonwealth* v. *Shaffer*, 367 Mass. 508, 511 (1975). The instructions twice announced self-defense as "legal justification for conduct which would otherwise constitute a crime," although this is disapproved as language for a charge. See *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 690-691 (1976); *Stokes*, *supra* at 591-592; *Commonwealth* v. *Collins*, 374 Mass. 596, 600 (1978). And the judge used the discouraged terminology of "if you find" and the "accused person claims" as preludes to the overemphasized language on the question whether the defendant had acted "with a bona fide belief that he had to so act in self-defense." See *Rodriguez*, *supra* at 690-691; *Connolly*, *supra* at 533-534. Contrast *Commonwealth* v. *Simmons*, 383 Mass. 40, 44 (1981).

417, 420 n.2 (1978). By the same token, "[t]he same increased expectations appropriately arise as to trial counsel's efforts to preserve the defendant's appellate rights." *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 842 n.2 (1980). Other considerations are the weight of the evidence, the seriousness of the deficiencies in the instructions, and a lack of prior opportunity to make the challenge on appeal or in postconviction proceedings. See, *Grace*, 381 Mass. at 758-759. The motion judge was presented with an issue of constitutional dimension, and therefore could not exercise discretion to deny the motion. See *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 58-59 (1974). The judge's treatment of the issue does not alter our standard of review. Compare *Commonwealth* v. *Buckley*, *ante* 373, 374 (1984).

When the judge finally did make an effort (in the third self-defense instruction segment) to remedy the burden shifting effects of prior instructions, the general charge on the Commonwealth's burden to prove absence of "self-defense" may have failed to connect this burden with the previously emphasized duty of the defendant to "have acted reasonably."[4] Nor was the attempted cure the final statement on the issue, for the judge returned (for another one and one-half pages of transcript) to emphasizing the defendant's duty to retreat, saying "[i]nsofar as [self-defense] is concerned, even in your own home, you don't forthwith immediately, spontaneously, instantly, shoot and kill, or shoot and use deadly force."

The principle that the charge to the jury must be examined in its entirety, *Commonwealth* v. *Rodriguez*, 370 Mass. at 690-691, has importance in this case, particularly because of the virtually undisputed events which resulted in gunfire. Undoubtedly, several juxtaposed sentences of the charge explicitly placed on the Commonwealth the burden to prove beyond a reasonable doubt that the defendant had not acted in self-defense. However, a composite view of the charge presents a case where errors and embellishments in the instructions and the ineffective location and phrasing of the appropriate instructions lead us to conclude that the over-all effect tended to foreclose serious consideration of the self-defense issue.[5]

---

[4] Cf. *Connolly*, 377 Mass. at 536, quoting from *United States* v. *Corrigan*, 548 F.2d 879, 882 (10th Cir. 1977) (A "specific instruction which is defective in respect to the burden of proof is not remedied by correct general statements of the law elsewhere given in the charge unless the general statement clearly indicates that its consideration must be imported into the defective instruction").

[5] Our conclusion that defects in the charge produce a substantial risk of a miscarriage of justice is buttressed by the judge's, and the jury's, treatment of the assault with intent to murder indictments. The judge charged the jury that that offense could be reduced to assault with intent to kill "provided the jury finds no malice on the part of the accused." The judge defined malice but did not define the element of intent to kill as required by *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966), and

2. *Newly Discovered Evidence.* The defendant's newly discovered evidence claim fails to satisfy several of the criteria listed in *Commonwealth* v. *Markham,* 10 Mass. App. Ct. 651, 654 n.1 (1980). There was evidence at the hearing on the motion that the proffered witnesses were known to the defendant before trial, that the defendant knew they could testify as to threats made against him, and that the defendant failed to provide this information to his attorney. See *Commonwealth* v. *Kelley,* 370 Mass. 147, 152 (1976); *Commonwealth* v. *Pires,* 389 Mass. 657, 665 (1983). Similarly, there was evidence that the defendant lacked diligence in informing his trial attorney while the latter showed no lack of diligence in searching for evidence. In these particulars, the motion judge could assess the credibility of the witnesses (i.e. the defendant and his former attorney), and he did not abuse his discretion in denying the motion. See *Commonwealth* v. *Meuse,* 3 Mass. App. Ct. 189, 192 (1975).

Finally, the allegedly new evidence did not create a "substantial risk that a jury exposed to that evidence would have reached a different conclusion." *Markham, supra* at 654. The gravamen of the defendant's newly discovered evidence claim is that the "nigh unimpeachable" testimony of Grillo (a New York city detective) and Ortiz (a former Brooklyn assistant district attorney) would have "provided powerful evidence that the defendant had reason to fear assassination by contract hit men" and thus "would have cast the defendant's case in a wholly different light." However, this position is weakened considerably because the proffered testimony was largely inadmissible. Ortiz's opinion that the defendant reasonably feared for his life, which was itself

*Commonwealth* v. *Stokes,* 374 Mass. 583, 594 (1978). The jury twice asked the judge to explain the difference between the two offenses. We have no way of knowing whether the apparent confusion of the jury was cleared up by the judge's supplemental instructions, which merely reiterated what he had charged earlier. The instructions may have left the jury in a confused state of mind which resulted in convictions of the lesser offense rather than acquittals.

inadmissible (see *Commonwealth* v. *Jones*, 319 Mass. 228, 230 [1946]), was based in large part on the out-of-court statements of the defendant's wife (the wife "told me . . . her husband was very much afraid") and one E.R. (E.R. "told us that there was a contract out on Diego"). When Grillo was asked whether his information concerning the threats was all hearsay, he responded, "Absolutely." Most of the information either witness had regarding the defendant's fears related to a time preceding the incident at bar by seventeen months. Any probative testimony remaining is balanced against the fact that four Commonwealth witnesses, all law enforcement officers, testified regarding supposed threats against the defendant. The proffered testimony of Ortiz and Grillo would have been cumulative of that trial evidence and was neither weighty nor potent. See *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 495 (1920); *Commonwealth* v. *Brown*, 378 Mass. 165, 171 (1979).

In denying this newly discovered evidence claim, we recognize that under these unusual circumstances, where the motion judge was not the trial judge and where testimony presented in support of the motion was not disbelieved by the motion judge, we are in much the same position as the motion judge to rule on the motion for a new trial. See *Commonwealth* v. *Woods*, 382 Mass. 1, 8-9 (1980); *Commonwealth* v. *Richardson*, 1 Mass. App. Ct. 348, 349 (1973). We therefore have considered the issue broadly to determine whether "justice may not have been done" (Mass.R.Crim.P. 30[b], 378 Mass. 900 [1979]) in denying the motion.

3. *Directed Verdicts.* It is in a special context that we address the defendant's contention that constitutional error was committed by the judge when he "directed verdicts" of guilty on indictment Nos. 87062, 87068, and 87070. At no time has the defendant disputed his guilt on the drug offense indictments. Before trial, no motion was filed with respect to any of them. At trial, the defendant took the stand and admitted he was "selling drugs at the time [of his arrest]." He specifically admitted at trial to the December 11, 1978,

sale of heroin, and pleaded guilty the day after trial to the August 29, 1978, sale. Defense counsel, in both his opening and closing statements, characterized the defendant as a "drug seller." Finally, during the defendant's closing statement, and upon the judge's inquiry, defense counsel admitted "adequate and sufficient evidence" on indictments Nos. 87062 and 87068 and on the underlying offense in indictment No. 87070. The strategy was apparent, for it reduced the issues at trial to whether the defendant had acted in self-defense and, arguably, gave credence to that claim.

Therefore, as the charges were submitted with agreement as to the facts, and as no question of law was involved, the action of the court in "directing verdicts" was without error. See *Commonwealth* v. *Ross*, 248 Mass. 15, 19 (1924). The defendant's reliance on *Commonwealth* v. *Hebert*, 379 Mass. 752 (1980), is misplaced, the facts there not having been agreed upon. In circumstances not present here, we would not bless a practice which permits, in effect, the entry of guilty plea without substantial compliance with the requirements of *Ciummei* v. *Commonwealth*, 378 Mass. 504, 509-510 (1979), and *Commonwealth* v. *Duquette*, 386 Mass. 834, 845-846 (1982).

4. *Adequacy of Indictment.* The defendant contends that he is entitled to a partial resentencing because indictment No. 87070 does not properly allege an offense punishable by the then existing enhanced penalty clause of G. L. c. 94C, § 32, inserted by St. 1971, c. 1071, § 1. There are two replies. First, after trial the defendant pleaded guilty to so much of the indictment as he now argues was inadequate. "Under the decided cases a guilty plea waives all but jurisdictional defects." *Commonwealth* v. *Snyder*, 12 Mass. App. Ct. 960 (1981). See *Commonwealth* v. *Zion*, 359 Mass. 559, 563 (1971). The objection here to the indictment was not jurisdictional. See *Commonwealth* v. *Chiovaro*, 129 Mass. 489, 497 (1880). Second, the defendant waived objection to the form of the indictment by failing to raise the claim by pretrial motion. See G. L. c. 277, § 47A; Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979).

5. *Ineffective Assistance of Counsel.* For the reasons discussed at length in the motion judge's memorandum, we reject the defendant's claim that his representation at trial was inadequate.[6] Trial counsel did well to present to the jury through cross-examination the testimony of four law enforcement officers that they had heard the defendant's "life had been threatened by some people in New York."

Accordingly, as to indictments Nos. 87068, 87069 and 87070, the order denying the motion for new trial is affirmed. As to indictments Nos. 87068 and 87069, the order vacating the sentences and resentencing is affirmed. As to indictments Nos. 87071 through 87074, inclusive, the judgments are reversed and the verdicts are set aside. Since the defendant was impliedly acquitted of the assaults with intent to murder at his trial in 1979, on any retrial of the indictments (Nos. 87073 and 87074) they must be treated as charging only assault with intent to kill. See *Commonwealth* v. *Harrington,* 379 Mass. 446, 455 (1980).

*So ordered.*

---

[6] We note that defense counsel on this appeal was not the defendant's trial counsel.