COMMONWEALTH *vs.* WAYNE P. VIDITO.

Worcester. November 15, 1985. — December 27, 1985.

Present: GREANEY, C.J., DREBEN, & KASS, JJ.

*Practice, Criminal,* Instructions to jury. *Self-Defense.*

At the trial of an indictment for assault and battery by means of a dangerous
weapon, the judge's instructions to the jury on the law of self-defense,
to which no objection was made, created no substantial risk of a miscar-
riage of justice where, although they were formulated in part in terms
of "justification" or "claim" by the defendant, the concept of reasonable
doubt was defined clearly and unambiguously and where, at the conclu-
sion of his instructions on self-defense, the judge emphasized that the
Commonwealth had to satisfy the jurors beyond a reasonable doubt that
the defendant had not acted in self-defense. [334-337]

At a criminal trial no error appeared in the judge's instructions to the jury
on the issue of self-defense, with respect to either the reasonableness
of the defendant's apprehension of suffering death or serious bodily
harm or the appropriateness of the force employed by him. [337-338]

At a criminal trial the judge did not err in instructing the jury, as to
self-defense, that they might consider such factors as the parties' physical
attributes, the presence of threats or weapons, and the location of the
incident in considering the reasonableness of the defendant's state of
mind, and that a person is under a duty to avoid physical combat whenever
possible. [338-339]

INDICTMENTS found and returned in the Superior Court De-
partment on August 13, 1984.

The cases were tried before *William C. O'Neil, Jr.,* J.

*Brownlow M. Speer,* Committee for Public Counsel Serv-
ices, for the defendant.

*Harry D. Quick, III,* Assistant District Attorney, for the
Commonwealth.

GREANEY, C.J. A Superior Court jury convicted the defend-
ant of assault with intent to murder and assault and battery by
means of a dangerous weapon. He was sentenced to concurrent
terms of imprisonment. After the trial, the judge allowed the

defendant's motion for a new trial on the indictment charging assault with intent to commit murder.[1] As a consequence, this appeal concerns only his conviction for assault and battery by means of a dangerous weapon.[2] As to that conviction, the defendant argues one issue — that the judge's instructions to the jury on the law of self-defense created a substantial risk of a miscarriage of justice. We disagree and affirm the conviction.

There is no need to summarize the evidence at the trial. The case presented by the prosecution, if believed by the jury, would have warranted a conclusion that the defendant, while intoxicated, had attacked the victim with a knife as the victim attempted to stop an argument at a party between the defendant and another man. In the course of the attack, the defendant inflicted serious wounds to the victim's left arm and back. The case presented by the defendant, if believed by the jury, would have warranted a conclusion that the defendant had used his knife solely to repel an attack by the victim, who had the defendant in a life-threatening choke hold. These, then, were the contentions before the jury: on the one hand, evidence of

---

[1] The trial occurred prior to the Supreme Judicial Court's opinion in *Commonwealth* v. *Henson,* 394 Mass. 584 (1985), and this court's opinion in *Commonwealth* v. *Ennis,* 20 Mass. App. Ct. 263 (1985), further appellate review granted, 396 Mass. 1101 (1985). These decisions dealt with the proper content of the instructions to a jury on the mental element of the crime of assault with intent to murder. The judge's instructions to the jury in this case on that crime contained several references which could have permitted the jury to convict the defendant on a finding that he had harbored less than a specific intent to kill. See the *Henson* decision, 394 Mass. at 590-592, and the *Ennis* decision, 20 Mass. App. Ct. at 264-269. When the *Henson* and *Ennis* decisions were called to the judge's attention by means of a motion for new trial, the judge recognized the potential for error in his instructions. To the judge's credit, rather than leaving the conviction to be reversed in the normal course of appellate review, he granted the defendant's motion for a new trial.

[2] The Commonwealth does not argue that decision of this appeal should be stayed until the defendant is retried on the charge of assault with intent to murder. We shall conclude later that the judge's instructions on self-defense were flawed, but not to a degree that requires a new trial. Since self-defense will be an issue at the defendant's retrial on the assault with intent to murder indictment, our opinion may assist the judge presiding at the retrial in avoiding error in the instructions on self-defense.

an unprovoked assault with a knife, and on the other, evidence that the knife had been used by the defendant only in self-defense.

To resolve these contentions, the judge gave the jury clear and correct instructions on the lawyers' role in the case, the jury's functions, the standards for testing the credibility of witnesses, the presumption of innocence, and the doctrine of proof beyond a reasonable doubt, employing, with respect to the last, the language set forth in *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850). The judge also correctly defined the elements of the crime of assault and battery by means of a dangerous weapon, and he dealt adequately with collateral issues in the case, such as the effect of the defendant's intoxication, if found, on his criminal responsibility. After all this was done, the judge explained the law of self-defense to the jury in the instructions that are set forth in the appendix to this opinion. The defendant's trial counsel, who the trial record suggests was reasonably experienced, made no objection to any of the instructions.

New counsel for the defendant on appeal now argues that the instructions on self-defense contain essentially the same infirmities that disabled the self-defense charge in *Commonwealth* v. *Rodriguez,* 17 Mass. App. Ct. 547 (1984), and led this court to reverse a conviction of assault and battery with a dangerous weapon to prevent a substantial risk of a miscarriage of justice in that case.

We first note that the absence of an objection to the instruction at the trial of this case is not lightly to be disregarded. Indeed, the third sentence of section (b) of Mass.R.Crim.P. 24, 378 Mass. 895 (1979), expressly provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection." Because "self-defense is a 'sensitive part of jury instructions in a criminal trial, [an error in which] can readily lead to a miscarriage of justice,'" *Rodriguez, supra* at 551, quoting from *Commonwealth* v. *Deagle,* 10 Mass. App. Ct. 748, 751 (1980), "increased expectations appropri-

ately arise as to trial counsel's efforts to preserve the defend-
ant's appellate rights." *Rodriguez, supra* at 551 n.3, quoting
from *Commonwealth* v. *Fitzgerald,* 380 Mass. 840, 842 n.2
(1980). The lack of an objection in this case suggests that the
defendant's trial counsel was satisfied with the instructions, at
least to a point where counsel felt that the jury had received
competent guidance on the legal principles governing the issue
of self-defense. See *Commonwealth* v. *Ely,* 388 Mass. 69,
73-74 (1983); *Commonwealth* v. *Sheffield,* 10 Mass. App. Ct.
863, 864 (1980).

Relief from the conviction, of course, may still be available
if any errors later discovered in the jury instructions prove so
egregious as to create a substantial likelihood of a miscarriage
of justice. See *Commonwealth* v. *Pires,* 389 Mass. 657, 664
(1983); *Commonwealth* v. *Pickles,* 393 Mass. 775, 776 (1985).
In deciding whether such a likelihood exists, we must examine
the entire charge, not merely its allegedly offensive passages.
If the instructions as a whole convey to the jury a fundamentally
correct appreciation of the law of self-defense and, in particular,
of the allocation of the burden of proof, any flaws along the
way will not necessitate a new trial. See *Commonwealth* v.
*Sellon,* 380 Mass. 220, 231-232 (1980); *Commonwealth* v.
*Beverly,* 389 Mass. 866, 870-873 (1983); *Commonwealth* v.
*Martinez,* 393 Mass. 612, 615 (1985).

Judged by these standards, we think the instructions on self-
defense in this case were adequate. To be sure, two portions
of the instructions contain archaic language. These are: (1) the
passage that characterizes self-defense as "the legal justification
for conduct that would otherwise constitute crimes such as
assault and battery," appendix par. 2, see *Rodriguez,* 17 Mass.
App. Ct. at 552, and cases cited;[3] and (2) the passage in which
the judge begins discussion of the appropriateness of the de-
fendant's use of force by stating: "Here when the defend-

---

[3] We note, however, that the judge's use of the word "justification" was
mitigated somewhat by the instruction two sentences later that "I am going
to put [the concept of self-defense] in another way and say, [that] the law
entitles a person to use reasonable force to protect himself from harm."
Appendix par. 2.

ant claims that the battery was committed in self-defense. . . ." Appendix par. 3. The formulation of self-defense instructions in terms of "justification," or a "claim" by a defendant, is disfavored because language of that type may have the effect in the jurors' minds of shifting the burden of proof on the issue to the defendant. This was the vice of the challenged instructions in the *Rodriguez* case, *supra,* the decision upon which the defendant principally relies. As this court observed of the *Rodriguez* instructions, the judge there had "used the discouraged terminology of 'if you find' and the 'accused person claims' as preludes to the overemphasized language on the question whether the defendant had acted 'with a bona fide belief that he had to so act in self-defense,'" 17 Mass. App. Ct. at 552, while failing "to remedy the burden shifting effects of prior instructions . . . [by connecting the Commonwealth's] burden with the previously emphasized duty of the defendant." *Id.* at 553. However, in *Rodriguez,* one critical disapproved phrase was repeated six times without an accompanying instruction that the Commonwealth had the burden of proof on the issue. *Id.* at 552. The charge contained other deficiencies as well, and "[w]hen the judge finally did make an effort . . . to remedy the burden shifting effects of prior instructions," *Rodriguez* at 553, he failed to "[import it] into the defective instruction." *Id.* at 553, n.4, quoting from *Connolly* v. *Commonwealth,* 377 Mass. 527, 536 (1979).

That is not our situation. We find this case similar in many respects to *Commonwealth* v. *Albert,* 391 Mass. 853 (1984), another case involving criticism of instructions on self-defense. Like the judge in *Albert,* the judge in this case defined "reasonable doubt" in clear, unambiguous terms, relying directly on the *Webster* formulation. See *Albert,* 391 Mass. at 858. Further, as in *Albert* (see 391 Mass. at 858), the judge in this case closely followed his explanation of the crime of assault and battery by means of a dangerous weapon (and prefaced his instructions on self-defense) by informing the jury that the Commonwealth bore the burden of proving beyond a reasonable doubt that the defendant had not acted in self-defense. In beginning this portion of the instructions, the judge in this case

was emphatic in asserting that the defendant had "[a]bsolutely n[o]" burden of proof upon the issue of self-defense. See *Albert,* 391 Mass. at 858 n.1. He then stated the Commonwealth's burden on this point three times ("has to establish," "has to convince," and "has to satisfy") before proceeding. Appendix par. 1.

Finally, the judge concluded his instructions on self-defense by advising the jury once again in explicit terms that the Commonwealth had to satisfy them beyond a reasonable doubt that the defendant had not acted in self-defense. Appendix par. 9. See also *Albert,* 391 Mass. at 858 n.1. We think the jury in this case, by any reasonable view of the instructions could not have misunderstood the Commonwealth's duty with respect to self-defense and could not have misallocated the burden of proof.

Other criticism of the instructions in this case attempts to bring them within the shadow of the faulty instructions in *Rodriguez.* None of the criticism strikes us as persuasive. We discuss each briefly.

We do not think it improper for a judge to instruct a jury that, before determining whether the defendant could use potentially deadly force to defend himself, they must first conclude that the Commonwealth has not shown that he was not under a reasonable apprehension of suffering death or serious bodily harm. Appendix par. 4. Similar language was approved in *Commonwealth* v. *Albert,* 391 Mass. at 861 ("the self-defense test . . . requires that the defendant 'had *reasonable* ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm,'" quoting from *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 [1980]).

In context, no error attended so much of the charge as instructed the jurors that they must "decide" or "determine" whether the defendant responded to the perceived threat with appropriate or excessive force. Appendix pars. 3, 5, and 7. Regardless of whether this language amounts to a paraphrase of the "if you find" language discouraged by *Rodriguez,* 17 Mass. App. Ct. at 552, because the language was bracketed with emphatic language that properly placed the burden of

proof on the Commonwealth, its use is not reversible error.[4] Moreover, we think it was appropriate for the judge to "remind the jurors that they had first to *determine* whether self-defense existed as an issue in this case." See *Commonwealth* v. *McMurtry,* 20 Mass. App. Ct. 629, 631 (1985) (emphasis supplied). Performing that inquiry requires the jury to evaluate, as a threshold issue, the over-all reasonableness of the force used in the name of self-defense. See *Commonwealth* v. *Harrington,* 379 Mass. at 450; *Commonwealth* v. *McMurtry,* 20 Mass. App. Ct. at 632. While "finding" language in self-defense instructions should be avoided, it is imperative that judges not be left completely tongue-tied when they must explain principles of law essential to the jury's decision.

We also find unsound the arguments that the trial judge erred when he told the jury (a) that they could look to such factors as the parties' physical attributes, the presence of threats or weapons, and the location of the incident in considering the reasonableness of the defendant's state of mind, and (b) that a person is under a duty to avoid physical combat whenever possible. Appendix pars. 5 and 6. The validity of such considerations is long-established in connection with the applicability of self-defense. See *Commonwealth* v. *Shaffer,* 367 Mass. 508, 512 (1975). See also *Commonwealth* v. *Kendrick,* 351 Mass. 203, 212 (1966). Moreover, the judge carefully couched his reference to a "duty" in terms that suggested no direct imposition of a burden on the defendant.

We therefore decline the invitation to find in the instructions in this case an echo of the bad instructions in *Rodriguez.* From our examination of the criticized portions of the instructions on self-defense in this court's discussion in *Rodriguez,* we perceive

[4] The court's disapproval in *Rodriguez* focused on the use of "finding" terminology as a "prelude" to other disfavored language, unaccompanied by the necessary connection to appropriate burden of proof language. 17 Mass. App. Ct. at 552. The instructions in the present case are closer to the language in *Connolly,* 377 Mass. at 535, where it was stated that an "isolated suggestion that the jury must find self-defense in order to acquit might not invalidate a charge if it could be fairly viewed as overcome and outweighed in the minds of a jury by the initial correct instruction and by the instructions as a whole."

a charge that was disorganized and filled with language that directly tended to shift the burden of proof on the issue. Indeed, the *Rodriguez* instructions on self-defense, dispensed at various points throughout the charge, give the impression of having been delivered impromptu, as might occur when instructions have been poorly thought out and inadequately prepared. By way of contrast, the instructions on self-defense in the present case bespeak advance preparation, and they are reasonably cohesive and comprehensive.[5]

We think a few final observations should be made. Ordinarily, we might have disposed of this case by an unpublished order pursuant to rule 1:28 of this court for lack of a substantial question of law. The order would have been accompanied by a memorandum, stating, in general terms, the analysis in this opinion. The panel thinks it important, however, to lay stress once again upon the fact that instructions on the law of self-defense must be carefully prepared and delivered so as to eliminate any language that might convey to the jury the impression that a defendant must prove that he acted in self-defense. This calls for excision from a charge of any language that phrases central concepts in terms of "justification," or of a "claim" or "claims"

---

[5] The defendant argues two other points to obtain a new trial based on claimed deficiencies in the instructions. He first urges that the weight of the evidence against him was so weak that he should receive the benefit of any doubt about the instructions. An examination of the entire record of the trial discloses, however, that the prosecution's proof was persuasive and was more than adequate to warrant a conviction.

As a second point, the defendant argues that the error in the instructions on the mental state required to convict of assault with intent to murder seeped into the instructions on self-defense and undermined the jury's consideration of that issue. See *Rodriguez,* 17 Mass. App. Ct. at 553 n.5. Of course, the issue of self defense went to both charges being considered by the jury. Our examination of the record reveals no likelihood of prejudicial seepage. The two statements of the correct burden of proof on the issue of self-defense, emphatically made, substantially reduced the chance that the jury would be misled by the error in the instructions on the crime of assault with intent to murder when they considered the issue of self-defense. The instructions also generally guided the jury to a separate consideration of the charges, a circumstance which further diminishes the possibility that they were misled by the deficiency in the instructions on assault with intent to murder.

on the part of the defendant, or that indicates the need for the jury to "find" one fact or another before they consider the existence of self-defense. We suspect that most trial judges, as they should, have their charges on self-defense prepared in advance. We suggest only that the instructions be periodically reviewed to prune out troublesome references in an effort to avoid needless appellate review.[6] Time-worn as the adage may be, "an ounce of prevention is worth a pound of cure."

*Judgment affirmed.*


APPENDIX.

The paragraph numbers have been inserted for reference in the course of our discussion of the instructions.

[1.] "There was one other aspect in this case that I will now speak to you about, and that is called the concept of self-defense. You heard testimony from the defendant in this case, which again is up to you to evaluate, which indicates to you, and it was argued to you, that Mr. Vidito said that he did what he did in order to save his own life, or to prevent himself from being seriously injured by [the victim]. Now, the fact that that evidence is in before you, does not mean by any means that Mr. Vidito, having raised that issue, has to convince you that that is so. Absolutely not. The Commonwealth has to establish in your minds beyond a reasonable doubt that what Mr. Vidito did was unlawful, unjustified. And that means that the Commonwealth has to convince you beyond a reasonable doubt of that, if you find what Mr. Vidito did was not an act that is permissible as self-defense. Now, have that in mind, that the Commonwealth has to satisfy you that what he did was not something that he was permitted to do in order to defend himself.

[2.] "I am going to speak more about self-defense, and I will use different examples and different words. Self-defense is the legal justification for conduct that would otherwise constitute crimes such as assault and battery. They would be criminal acts if they were not for the fact that the purpose of the conduct was to defend a person from unlawful acts which may result in offensive conduct. I am going to put that in another way and say, the law entitles a person to use reasonable force to protect himself from harm. In general, one has the

---

[6] Without limiting trial judges to a single formula, we commend to their attention a model instruction dealing with the question of burden of proof in a situation of self-defense set out in *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 692 n.10 (1976).

right to use that degree of force necessary to repel an attack or to prevent threatened harm. That is the general definition of what we mean by self-defense. The right does not accrue to a person until he has availed himself of all proper means of avoiding the harm. Thus, the law doesn't permit retaliation, and conduct is unprivileged when greater force or harsher means are used than are in fact or apparently necessary. The response need not be limited to the slightest amount of force or the least adequate means.

[3.] "Here when the defendant claims that the battery was committed in self-defense, the question whether the force used was appropriate in kind or degree, is up to you to decide. The force which is justifiable, must be reasonable and not disproportionate to the requirements of the case at the time. Whether it was suitable or moderate in this case, is a question of fact for you to determine.

[4.] "Now, two conditions must exist before a person is justified in using force calculated to cause death or serious bodily harm, and you have to determine whether the force in this case was calculated to or likely to cause death or serious bodily harm. The first condition is a reasonable apprehension on the part of Mr. Vidito that no other means would suffice to save him from death or serious bodily harm. In making that determination, there are some factors that you should, and I tell you, to consider.

[5.] "You consider the physical attributes of in this case Mr. Vidito and [the victim], their size, their apparent physical capability of causing injury. Consider whether there were any threats of violence by [the victim] to Mr. Vidito. Consider the weapons used, if weapons were used, if you find that they were. You also can consider the place that all of this took place, whether it was inside or outside, as it was in this case. Whether there was an opportunity to run away or find some other way to avoid the use of force. None of these tests are conclusive in deciding whether the force used by Mr. Vidito was appropriate and justified under the circumstances, but you take all of them in consideration.

[6.] "You also consider the fact that a person has a duty to avoid physical combat. A person using physical force and the idea of self-defense in order to prevent injury to himself, must, before resorting to the use of deadly force to protect himself take advantage of all proper and reasonable means to avoid the use of force. So, you consider again whether there was an opportunity to shake him off or run away, or some other alternative to the use of the force.

[7.] "The right to use deadly force ends when the threat as presented ends. So, any deadly force that was used by the threat [*sic*] has ceased to exist, cannot be justified under the concept of self-defense.

[8.] "The question as to how far the defendant in this case could go in defending himself, is a question for you as jurors to decide. But the law says that it isn't to be judged in a nice, precise manner, but it has to be judged with the due regard for the infirmity of human impulses and passions. So, the test you will use is one of reasonableness, and with due regard to the frailties of human behavior.

[9.] "Again I am going to say, again so there won't be any question, that since the Commonwealth has to show that what you find Mr. Vidito did was

unjustified and unlawful, the Commonwealth has to satisfy you beyond a reasonable doubt that it wasn't done in a justifiable exercise of force for defense of oneself under all the circumstances."