Commonwealth v. Kirker.

COMMONWEALTH vs. EDWARD KIRKER.

Bristol. November 4, 2003. - March 12, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Destruction of Property. Malicious Injury to Property. Practice, Criminal,*
*Instructions to jury, Argument by prosecutor, Comment by prosecutor. Self-*
*Defense. Assault and Battery by Means of a Dangerous Weapon. Words,*
*"Value of the property."*

Where a criminal defendant was convicted of malicious destruction of property
valued at over $250, G. L. c. 266, § 127, based on his actions in slashing
two tires on the victim's automobile, this court concluded, based on the
rule announced in *Commonwealth* v. *Deberry, ante* 211 (2004), that the
proper measure of the value of the property damaged was the replacement
cost of the two tires, and not the value of the automobile, and that the
Commonwealth's failure to produce any evidence on that issue required
reversal of the defendant's conviction. [228-229]

Jury instructions on self-defense at the trial of an indictment for assault and
battery with a dangerous weapon did not create a substantial risk of a
miscarriage of justice, where a single fleeting misuse of the word "find" in
those instructions did not shift the burden to the defendant to prove self-
defense. [229-231]

A remark in a prosecutor's closing argument at a criminal trial that the
defendant had been in a "knife fight," although an inaccurate characteriza-
tion of the evidence of an earlier stabbing incident, was insignificant and
did not create a substantial risk of a miscarriage of justice, in light of the
evidence of the defendant's guilt and the judge's instructions. [231-232]

INDICTMENTS found and returned in the Superior Court Depart-
ment on July 28, 1999.

The case was tried before *John A. Tierney*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Brona E. Pinnolis* for the defendant.

*M. Catherine Huddleson*, Special Assistant District Attorney,
for the Commonwealth.

MARSHALL, C.J. We transferred this case from the Appeals
Court on our own motion to consider the proper method for

determining "the value of the property so destroyed or injured," an essential element of the felony offense of malicious destruction of property valued at over $250, pursuant to G. L. c. 266, § 127.[1] In this case the defendant was convicted of that offense on evidence that he punctured two automobile tires with a knife. Citing to conflicting decisions of the Appeals Court, the Commonwealth contends that the law in this respect is unsettled. See *Commonwealth* v. *Deberry, ante* 211 (2004).

The defendant appealed from his conviction under G. L. c. 266, § 127, and from a conviction of assault and battery by means of a dangerous weapon (a knife) under G. L. c. 265, § 15A (*b*), claiming error in certain jury instructions and in the prosecutor's closing argument.[2] At trial the defendant had moved for a required finding of not guilty on the ground that there was insufficient evidence that the value of the punctured tires exceeded $250. He had also argued that he stabbed the victim in self-defense. We affirm the conviction of assault and battery by means of a dangerous weapon. We reverse the conviction of malicious destruction of property over $250.

1. *Background.* This matter arises from a violent altercation outside a bar in Fall River on the night of May 4, 1999. Reviewing the record in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), a reasonable jury could have found the following.

On the evening in question, the defendant was sitting at the bar with a friend. The victim, accompanied by a man he knew

---

[1] General Laws c. 266, § 127, as amended through St. 1994, c. 168, § 4, provides, in pertinent part: "Whoever destroys or injures the personal property, dwelling house or building of another in any manner or by any means not particularly described or mentioned in this chapter shall, if such destruction or injury is wilful and malicious, [be guilty of a felony]; if the value of the property so destroyed or injured is not alleged to exceed two hundred and fifty dollars, [the offender shall be guilty of a misdemeanor]."

[2] On July 28, 1999, the defendant was indicted for armed assault with intent to murder; assault and battery by means of a dangerous weapon, a knife; and malicious destruction of property valued over $250. On April 13, 2001, after a jury trial in the Superior Court, the defendant was convicted of assault and battery by means of a dangerous weapon and malicious destruction of property valued over $250. The defendant was sentenced to from nine to ten years in State prison on the assault and battery by means of a dangerous weapon conviction, and to from one to five years on the malicious destruction of property valued over $250 conviction, to be served concurrently.

as Thomas, entered the bar to play a game of pool. The defendant, whom the victim did not know, recognized Thomas, with whom the defendant then engaged in a heated exchange.[3] As the argument escalated, the victim attempted to leave the bar. He testified that he heard footsteps behind him, turned, and saw the defendant "lunging" at him. The victim grabbed the defendant, threw him out the door, and the two fought. The victim kicked the defendant in the face, telling the defendant to "leave me alone." As the defendant stood up, he told the victim that he was going to kill him. The victim began to walk away, but twice turned when he heard the defendant following him. The third time the victim turned, he raised his fists and told the defendant to put down his knife and "fight like a man." As the victim approached the defendant, the victim tripped, at which point, he testified, the defendant ran toward him and stabbed him.[4] A witness, viewing the scene from an apartment located over the bar, testified that he saw the defendant, who was bloodied, push the victim in the chest and that the defendant was holding something shiny in his hand.

The same witness testified that he then saw the defendant puncture a rear tire of an automobile, the victim's Toyota Celica. The first police officer on the scene testified that the defendant was near the rear tire of the victim's automobile, moving his arm; the officer then heard a hissing sound. The officer testified that the Toyota had two flat tires on its right side. The victim testified that he had paid $7,500 for the Toyota some two years before the incident, and that it was in "mint condition."

2. *Malicious destruction of property.* At the close of the Commonwealth's evidence, the defendant moved unsuccessfully for a required finding of not guilty, arguing that the Commonwealth had presented insufficient evidence of the value of the two slashed tires, which, he maintained, was the correct measurement of the "value" of the property damaged. G. L. c. 266, § 127. The Commonwealth contended, and the judge instructed,

[3]The defendant called Thomas a "drug dealer," and told him to go into the bathroom. While holding a knife in his hand, the defendant said, "I'm going to stick him." The victim responded, "Why don't you leave him alone. We only came to shoot a game of pool."

[4]The victim was stabbed in the chest and collapsed. Emergency medical technicians succeeded in resuscitating him.

that for the purposes of G. L. c. 266, § 127, the jury should consider the value of the automobile, not the value of the damaged tires. In *Commonwealth* v. *Deberry, supra,* we concluded that, for purposes of determining whether an offense under G. L. c. 266, § 127, is a felony or misdemeanor, "where damage is caused to a portion of the property as a whole and may be replaced or repaired, the value of the property is to be measured by the pecuniary loss" to the victim, in that case the reasonable cost of the repairs necessitated by the malicious conduct. *Id.* at 213. See *Nichols* v. *United States,* 343 A.2d 336, 342 (D.C. 1975) (where defendant damaged roof of building "the value of the property damaged or destroyed is to be measured by the reasonable cost of the repairs necessitated by the malicious conduct"); *State* v. *Breznick,* 134 Vt. 261, 266 (1976) (where defendants slashed four tires of victim's automobile, value of property so damaged refers "to the amount of damage inflicted so that an offender will be subject to punishment proportionate with the quantum of damage inflicted as opposed to the value of the property damaged").

In this case only the tires of the victim's automobile were destroyed; there was no other damage to the Toyota. Accordingly, the proper measure of the value of the property damaged is the replacement cost of the two tires. *Commonwealth* v. *Deberry, supra* at 224. Because the Commonwealth introduced no evidence to that effect, it failed to prove an essential element of the felony crime of malicious destruction of property over $250, under G. L. c. 266, § 127.[5] *Id.* See *Commonwealth* v. *Beale,* 434 Mass. 1024, 1025 (2001). The conviction of malicious destruction of property over $250 is reversed. A finding of guilty of the lesser included offense of malicious destruction of property under $250 shall enter. See *Commonwealth* v. *Deberry, supra.*

3. *Jury instructions.* In his instructions to the jury on self-defense, the judge stated, in part: "[I]f you find that the defendant acted reasonably in self-defense and did not use

---

[5]The defendant did not argue at trial that the correct measurement for determining the value of the property destroyed was the replacement cost of the two tires. For the reasons we explained in *Commonwealth* v. *Deberry, ante* 211, 221 n.19 (2004), the defendant did not waive the claim.

excessive force, then self-defense is a defense to the crime of assault and battery with a dangerous weapon." The defendant argues that the judge's use of the word "find" impermissibly shifted the burden of proof to the defendant by implying that he bore the burden of establishing that his actions were reasonable. Because the defendant did not object to the judge's instructions, we review any error to determine whether it created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Alphas,* 430 Mass. 8, 13 (1999). We conclude it created no such risk.[6]

The use of "finding" language in jury instructions on self-defense is disapproved. See, e.g., *Connolly* v. *Commonwealth,* 377 Mass. 527, 533-534 (1979) (noting with disapproval "repeated use of 'finding' language when explaining the law of self-defense"). Such use, however, "does not automatically render a set of instructions constitutionally defective." *Commonwealth* v. *Albert,* 391 Mass. 853, 859 (1984), citing *Commonwealth* v. *Simmons,* 383 Mass. 40, 44 (1981). Here, the judge correctly instructed the jury on self-defense, repeatedly instructed that the defendant did not need to prove anything or produce any evidence, and repeatedly instructed that the Commonwealth always bears the burden of proof. The judge stated specifically that "the Commonwealth must prove beyond a reasonable doubt that [the defendant] did not act in self-defense." Reviewing these instructions in their entirety, we conclude that a single, fleeting misuse of the word "find" did not shift the burden to the defendant to prove self-defense.[7] See *Commonwealth* v. *Whitman,* 430 Mass. 746, 756-757 (2000);

---

[6]The Commonwealth argues on appeal that the defendant was not entitled to an instruction on self-defense because no view of the evidence warranted a reasonable doubt that the defendant had a reasonable or actual fear of death or serious bodily injury when he stabbed the victim, that he used all available means to avoid physical contact before resorting to the use of deadly force, or that he used no more force than was reasonably necessary in the circumstances of the case. See *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980). The Commonwealth did not object when the defendant sought and obtained such a self-defense instruction.

[7]We reject the defendant's contention that, to cure the error, the judge should have immediately restated that it was the Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. The defendant did not alert the judge to the misstatement. There were no other instructions that so much as hinted at a shift in the burden of proof.to the

*Commonwealth* v. *Lapointe*, 402 Mass. 321, 328 (1988); *Commonwealth* v. *Albert, supra.*[8]

4. *Prosecutor's closing argument.* In his closing argument the prosecutor told the jury that, while the defendant was seated at the bar before the victim and his companion arrived, he was "showing off his battle scars from the previous week." He was, continued the prosecutor, "[p]ulling up his shirt and showing a knife wound *from some knife fight* he got into a week before" (emphasis added). The prosecutor's statement that the defendant had been in a "knife fight" was not supported by the evidence.[9] The defendant claims that the statement was improper and requires reversal. The claim lacks merit.

There was no objection to the prosecutor's remark. We therefore determine whether the error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Thomas*, 400 Mass. 676, 682 (1987). We consider the improper remark in the context of the entire argument, the judge's instructions to the jury, and the evidence at trial.[10] See *id.* See also *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 n.8 (1987) ("absence of objection by defense counsel during or after argument may provide some guidance as to whether a particular argument was prejudicial in the circumstances").

The prosecutor made only one reference to a "knife fight."

---

defendant. Compare *Commonwealth* v. *Whitman*, 430 Mass. 746, 756-757 (2000), with *Commonwealth* v. *Mejia*, 407 Mass. 493, 495-497 (1990).

[8]The defendant also contends that the judge should have given an instruction on consciousness of guilt. The defendant did not request an instruction on consciousness of guilt, and a judge is not required to give one sua sponte. *Commonwealth* v. *Simmons*, 419 Mass. 426, 435-436 (1995). There was no error.

[9]There was evidence that the defendant previously had been stabbed. One witness testified that the defendant was "seated at the bar having a drink" with a friend, engaged in "normal small talk," and that at one point the defendant explained that "somebody . . . had stabbed him the week before." Another witness testified that the defendant showed his scar on his stomach to his friend and the employees at the bar. She also testified that "he was talking about being upset that he had been stabbed prior to that, the week before or so."

[10]Prior to trial, the defendant filed a motion in limine to exclude evidence of any prior convictions. The motion was allowed, but the prosecutor alerted the defendant that he would refer to the defendant's earlier stab wound. Defense counsel did not object to the prosecutor's plan to elicit such testimony, nor did he object when the evidence was introduced.

The prosecutor's statement was part of his description of the defendant's actions before the victim entered the bar. He did not intimate that the defendant had been an aggressor in any fight, and the prosecutor drew no inference linking the earlier incident to the defendant's actions for which he was on trial. Moreover, the judge properly instructed the jury that opening and closing remarks are not evidence. The evidence of the defendant's guilt, as attested by the victim, an eyewitness, and other evidence, was overwhelming. In light of this evidence and the judge's instructions, the prosecutor's inaccurate characterization of the evidence of an earlier stabbing incident as a "knife fight" was insignificant and did not result in a substantial risk of a miscarriage of justice. See *Commonwealth* v. *O'Connell*, 432 Mass. 657, 660 (2000) (minor inaccuracy in prosecutor's closing does not constitute reversible error in context of entire case); *Commonwealth* v. *Thomas, supra* at 682-685 (no risk that prosecutor's "slip of the tongue" misled jury and created substantial risk of miscarriage of justice).

5. *Conclusion.* The defendant's conviction of assault and battery by means of a dangerous weapon is affirmed. The judgment on the defendant's conviction of malicious destruction of property over $250 is reversed, the verdict is set aside, and the case is remanded to the Superior Court, where a finding of guilty of the lesser included offense of malicious destruction of property under $250 is to enter. The defendant is to be sentenced pursuant to those provisions of G. L. c. 266, § 127, that pertain to the misdemeanor offense.

*So ordered.*